## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

THE MEDICAL PROTECTIVE COMPANY )
OF FORT WAYNE, INDIANA, )
                         )
     **Plaintiff,** )
                         )
   **v.** )     **CAUSE NO. 1:13-CV-00357**
                         )
AMERICAN INTERNATIONAL SPECIALTY )
LINES INSURANCE COMPANY, )
                         )
     **Defendant.** )

## OPINION AND ORDER

Before the Court in this breach of contract action are two motions to compel: one filed by

Defendant American International Speciality Lines Insurance Company ("AISLIC") (Docket #

24), and the other by Plaintiff The Medical Protective Company of Fort Wayne, Indiana

("MedPro") (Docket # 29). The motions are now fully briefed and ripe for ruling. (Docket 25,

30-36.)

For the following reasons, AISLIC's motion will be GRANTED, and MedPro's motion

will be DENIED.

### A. Factual and Procedural Background

On December 23, 2013, MedPro, a healthcare and dental malpractice insurance provider,

filed this action against AISLIC, an insurer who issued MedPro a professional liability policy,[1]

alleging that AISLIC breached the policy when it refused to cover a bad faith claim brought

---

[1] AISLIC first issued MedPro professional liability coverage effective July 1, 2005, to July 1, 2006, and then renewed its coverage for the policy period July 1, 2006, to July 1, 2007. (Compl. ¶¶ 11-12.)

against MedPro in Texas.[2] (Docket # 1.)

The Court held a preliminary pretrial conference in this matter on March 28, 2014, and set a discovery deadline of October 31, 2014. (Docket # 21.)  This deadline was later extended to December 31, 2014. (Docket # 27.)

As to the instant discovery dispute, AISLIC asked in its first set of requests for production of documents that MedPro produce all documents relating to MedPro's handling of both the malpractice claim against its insured doctor and the later bad faith claim asserted against it directly by the Bramletts. (Hafner Decl. Ex. A.)  MedPro, however, objects to producing any documents in its claim file for the malpractice claim generated after June 30, 2005–when the AISLIC professional liability insurance coverage commenced–claiming they are not relevant to AISLIC's coverage defenses and as such, their production would be unduly burdensome. (*Id.* at Ex. B; Pl.'s Resp. Br. 5, 9.)

Turning to MedPro's motion, it asked in its first set of discovery requests that AISLIC produce its "entire claim file (subject only to claims of privilege) and to produce a corporate designee to testify about the contents of that file." (Pl.'s Mem. in Supp. 1.)  MedPro explains that the claim file is "where AISLIC in the ordinary course of business recorded the factual investigation and decision-making behind its denial of coverage." (*Id.*)  AISLIC objects to this

---

[2] The bad faith claim stemmed from MedPro's handling of a wrongful death suit brought by the family of Vicky Bramlett in May 2003 against a Texas doctor to whom MedPro had issued a medical malpractice policy. (Compl. ¶¶ 1, 23, 26, 27.)  After MedPro declined to settle the suit on the doctor's behalf for the $200,000 policy limits and Texas statutory cap, the suit was tried in October 2005 and resulted in a $12,000,000 judgment against the insured doctor. (Compl. ¶¶ 29, 30, 42, 43.)  After the Texas Supreme Court held in 2009 that MedPro could be liable for an excess judgment over and above the physician's liability cap of $200,000, the Bramletts promptly filed suit against MedPro, asserting that it acted in bad faith when it refused to settle the malpractice suit against its insured doctor. (Compl. ¶¶ 46, 49.)  The Bramletts and MedPro ultimately settled the case in 2013 for a confidential amount exceeding the $5,000,000 AISLIC policy limit. (Compl. ¶¶ 52, 53.)

discovery request, asserting that because the sole matter in this dispute is whether MedPro is entitled to coverage under the professional liability insurance policy, AISLIC's knowledge and conduct are irrelevant. (AISLIC's Mem. in Opp'n 1-2.)

### B.  Standard on a Motion to Compel Discovery

Federal Rule of Civil Procedure 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense . . . ."  For the purpose of discovery, relevancy will be construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see* Fed. R. Civ. P. 26(b)(1) ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.").  "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Chavez*, 206 F.R.D. at 619.

### C.  Discussion

#### 1.  AISLIC's Motion to Compel

MedPro argues that AISLIC's request for all documents relating to MedPro's handling of both the malpractice claim and the bad faith claim is overly broad.  More pointedly, MedPro points to the affirmative defenses pled by AISLIC, asserting that "the coverage issues in this case turn on the facts and circumstances existing, and known, to MedPro as of June 30, 2005,"

making documents generated after that date irrelevant. (Pl.'s Resp. Br. 2.)

AISLIC is asserting the following affirmative defenses: (1) the Bramlett malpractice claim was made against MedPro prior to the July 1, 2006, to July 1, 2007, policy period; (2) MedPro knew or could have reasonably foreseen before June 30, 2005, that MedPro had committed a wrongful act (i.e., that it failed to settle the Bramlett malpractice claim within the policy limits) that would lead to a claim or suit; and (3) the "known loss" doctrine precludes coverage, as MedPro was "substantially certain" on or before July 1, 2006, that there would be a claim made against it for its handling of the Bramlett malpractice claim. (AISLIC's Mem. in Supp. 3-4.)

In light of AISLIC's affirmative defenses, the start date of MedPro's professional liability policy, June 30, 2005, does appear significant to this litigation.[3]  But MedPro's blanket assertion–that all documents generated after that date are irrelevant–is untenable.  "The relevant time period for which a party may be required to search for and produce documents depends on the facts and circumstances of the particular case.  The date by which a [party's] allegedly wrongful conduct was complete does not necessarily preclude discovery of information or documents created after that date." *Soffer v. Five Mile Capital Partners, LLC*, No. 2:12-cv-01407, 2013 WL 4499011, at *3 (D. Nev. Aug. 19, 2013).  "Documents that post-date the transactions may nevertheless relate back to the state of affairs as it existed at the crucial time." *Assured Guar. Mun. Corp. v. UBS Real Estate Sec., Inc.*, No. 12 Civ. 1579, 2012 WL 5927379, at *1 (S.D.N.Y. Nov. 21, 2012).

---

[3] It is a bit unclear from the briefs whether MedPro's coverage under the initial AISLIC insurance policy commenced on June 30, 2005, or the following day, July 1, 2005.  This discrepancy, however, is immaterial to this dispute.

Here, MedPro's complaint puts at issue documents generated after June 30, 2005. That is, MedPro is seeking coverage under the AISLIC renewal policy period of July 1, 2006 to July 1, 2007. And AISLIC's "known loss" defense places MedPro's knowledge as of July 1, 2006, the policy renewal date, at issue. Also, the Bramlett settlement for which MedPro seeks indemnification was the result of the bad faith claim litigated from 2009 to 2013; documents relating to that action would presumably speak to MedPro's conduct and knowledge during its handling of the malpractice claim in 2003 and 2004. *See Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp., N.V.*, No. 94 Civ. 4725, 1997 WL 272405, at *5 (S.D.N.Y. May 21, 1997) ("The relevant question with respect to documents prepared or communications occurring after August 10, 1994 is not the *date* thereof, but whether or not that document or communication contains information that is *relevant* to the actions [plaintiff] took prior thereto." (emphasis in original)). Accordingly, MedPro's objections based on relevancy are overruled, as documents generated after June 30, 2005, that are responsive to AISLIC's discovery requests appear "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

MedPro's objections on grounds of undue burden fare no better. In that regard, MedPro urges that the burden of producing this "voluminous amount" of documents, which would need to be reviewed for privilege, outweighs their "neglible relevance. " (Pl.'s Resp. Br. 9.) But "[g]eneral and conclusory objections as to . . . burden are insufficient to exclude discovery of requested information." *Assured Guar. Mun. Corp.*, 2012 WL 5927379, at *2 (alternation in original). "[I]f a party is to resist discovery as unduly burdensome, it must adequately demonstrate the nature and extent of the claimed burden by making a specific showing as to how disclosure of the requested documents and information would be particularly burdensome."

*Boyer v. Gildea*, No. 1:05-cv-129, 2008 WL 4911267, at *4 (N.D. Ind. Nov. 13, 2008) (citations and internal quotation marks omitted). Here, MedPro fails to make a specific showing of undue burden, instead advancing merely a conclusory objection.

Nor is MedPro's argument that many of these documents are already in AISLIC's (or its coverage counsel's) possession effective. "[I]t is not a proper objection to discovery to suggest that the other party already has the information or that it is available elsewhere." *Jones v. Chase Manhattan Bank USA, NA*, No 1:07-cv-58, 2007 WL 3286854, at *2 (N.D. Ind. Nov. 5, 2007); *see Ragan v. Jeffboat, LLC*, 149 F. Supp. 2d 1053, 1061 (S.D. Ind. 2001) (finding the fact that defendant produced the document to the EEOC and that plaintiff could have gotten the document from the EEOC irrelevant to plaintiff's discovery request for the document).

To reiterate, MedPro's responsive documents dated after June 30, 2005 are reasonably calculated to lead to the discovery of admissible evidence, and MedPro has failed to show that the burden of producing them outweighs their relevancy. Consequently, "it is clear that the truthseeking function will best be served by granting the motion." *Boyer*, 2008 WL 4911267, at *6 (citation omitted). Accordingly, AISLIC's motion to compel will be GRANTED.

### 2. MedPro's Motion to Compel

MedPro asks in its motion that the Court compel AISLIC to produce its entire "'claim file,' where AISLIC in the ordinary course of business recorded the factual investigation and decision-making behind its denial of coverage," and also produce a Rule 30(b)(6) representative to testify about the contents of the file. (Pl.'s Mem. in Supp. 1.) In making this request, MedPro explains that it seeks to discover "the factual basis for AISLIC's decision to deny coverage" of the bad faith claim brought against MedPro by the Bramletts. (*Id.*)

AISLIC, however, argues that its claim file is not relevant because this dispute solely involves whether MedPro is entitled to coverage under the policy. AISLIC asserts that its affirmative defenses place MedPro's knowledge and conduct at issue, not its own.

Indeed, MedPro does not dispute that the sole claim at issue in this case is whether AISLIC breached the insurance contract when it denied MedPro coverage of the bad faith claim. (*See* Docket # 1, 30, 36.) That is, MedPro is not advancing a separate tort claim that AISLIC denied coverage in bad faith. *See generally Westfield Ins. Co. v. Sheehan Constr. Co.*, 580 F. Supp. 2d 701, 717 (S.D. Ind. 2008) ("The tort action recognized in *Erie Insurance* [*v. Hickman by Smith,* 622 N.E.2d 515 (Ind. 1993),] requiring an insurer to act in good faith with an insured is distinct from the duty to not breach the insurance contract.").

"Coverage under an insurance policy is generally a question of law that does not require inquiry into the motivations or the reasoning process of the insurer or its representatives."[4] *Winter v. Liberty Mut. Fire Ins. Co.*, No. 06-C-800, 2006 WL 2711804, at *2 (E.D. Wis. Sept. 21, 2006); *see Ramirez v. Am. Family Mut. Ins. Co.*, 652 N.E.2d 511, 516-17 (Ind. Ct. App. 1995) ("Insurance coverage is a legal question based upon the terms of the underlying insurance contract."); *see also Medical Assur. Co.*, 779 F. Supp. 2d at 908 (same). "The motivation and intent of the insurer, on the other hand, are directly relevant to bad faith claims." *Winter*, 2006 WL 2711804, at *2; *see* 2 Allan D. Windt, *Insurance Claims and Disputes* § 919 (6th ed.) ("An

---

[4] "Generally, in Indiana, contracts for insurance are subject to the same rules of interpretation as are other contracts." *Medical Assur. Co. v. Miller*, 779 F. Supp. 2d 902, 908 (N.D. Ind. 2011). "[I]f a contract is clear and unambiguous, the language therein must be given its plain meaning." *Neighborhood Hous. Servs. of Am. v. Rainbow Cmty. Org., Inc.*, No. 1:08-cv-182, 2009 WL 5031336, at *2 (N.D. Ind. Dec. 15, 2009) (quoting *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002)). "It is only where a contract is ambiguous and its interpretation requires extrinsic evidence that the fact-finder must determine the facts upon which the contract rests." *Id.* (quoting *Zurich Am. Ins. Group v. Wynkoop*, 746 N.E.2d 985, 988 (Ind. Ct. App. 2001)).

insurer's claim file is relevant only to the issue of whether the insurer acted in bad faith.").

Accordingly, MedPro's request for AISLIC's entire claim file is overly broad.[5]

This does not leave MedPro empty-handed, however. In its Interrogatory Nos. 3 through 10 MedPro asked AISLIC for "each and every" fact, witness, and document that will support its affirmative defenses, and in Document Request Nos. 7 through 14, MedPro asked AISLIC for all documents and communications that "support, or in any way relate to" its affirmative defenses. (Richeimer Decl. Exs. B-E.) Accordingly, AISLIC is reminded of its ongoing duty under Federal Rule of Civil Procedure 26(e) to supplement its answers to Plaintiff's First Set of Interrogatories and First Requests for Production of Documents, not just with responsive material that "supports" its affirmative defenses, but with all documents and communications that "in any way relate to" these defenses.

For these reasons, MedPro's motion to compel will be DENIED without prejudice, subject to renewal upon the filing of a summary judgment motion by AISLIC. *See Neighborhood Housing*, 2009 WL 5031336, at *3. If at the time MedPro believes it cannot respond to AISLIC's summary judgment motion without performing additional targeted discovery, it may file an affidavit pursuant to Federal Rule of Civil Procured 56(f) explaining specifically what

---

[5] There is one caveat raised by AISLIC's "known loss" affirmative defense. The "known loss" doctrine "is inapplicable if the insurer also knew of the circumstances on which it bases the defense." *Gen. Housewares Corp. v. Nat'l Surety Corp.*, 741 N.E.2d 408, 414 (Ind. Ct. App. 2000). Therefore, discovery concerning an insurer's knowledge could be relevant in certain instances.

Here, however, MedPro does not allege that AISLIC knew of the Bramlett bad faith claim when it extended the renewal policy to MedPro on July 1, 2006. Quite to the contrary, MedPro asserts that the bad faith claim was unforeseeable, alleging that "to the best of MedPro's knowledge, no insurer before MedPro, and none after, has had to face an extracontractual claim" for the full amount of a malpractice judgment beyond the physician liability cap as was imposed by the Texas courts in the Bramlett malpractice suit. (Compl. ¶ 48.) Thus, MedPro claims that AISLIC first learned of the bad faith claim on June 26, 2007–just days before the renewal policy term ended–when MedPro submitted a "supplemental disclosure" to AISLIC reporting the "potential claim" against MedPro for its handling of the Bramlett malpractice suit. (Compl. ¶ 23.)

discovery it needs to perform in order to respond to AISLIC's motion. *See id.* And, if upon resolution of AISLIC's summary judgment motion, the language of any exclusions in the professional liability policy is determined to be ambiguous and its interpretation requires extrinsic evidence, MedPro's motion to compel may be renewed as well. *See id.*

### D. Conclusion

Defendant's Motion to Compel Production of Documents (Docket # 24) is GRANTED. Plaintiff must produce to Defendant on or before October 27, 2014, all documents generated after June 30, 2005, that are responsive to Defendant's First Set of Requests for Production of Documents.

Plaintiff's motion to compel (Docket # 29) is DENIED. Defendant is reminded, however, of its ongoing duty under Federal Rule of Civil Procedure 26(e) to supplement its answers and responses to Plaintiff's First Set of Interrogatories and First Requests for Production of Documents.

SO ORDERED.

Enter for October 6, 2014.

S/Roger B. Cosbey_____
Roger B. Cosbey,
United States Magistrate Judge