**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

THE MEDICAL PROTECTIVE COMPANY OF FORT WAYNE INDIANA,

Plaintiff,

v.

AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,

Defendant.

CAUSE NO.: 1:13-CV-357-HAB

**OPINION AND ORDER**

In this litigation, Plaintiff Medical Protective Company of Fort Wayne, Indiana (MedPro), has sued Defendant American International Specialty Insurance Company (AISLIC), now known as AIG Specialty Insurance Company, for breach of the terms of a 2006 policy AISLIC issued to MedPro. MedPro alleges that AISLIC breached the policy when it refused to cover MedPro's extra-contractual liability and eventual settlement of a third party's bad faith claim against MedPro.

Both parties moved for summary judgment [ECF Nos. 68 & 69]. MedPro sought partial summary judgment on three of AISLIC's affirmative defenses: prior known wrongful acts exclusion, known loss doctrine, and rescission. AISLIC moved for judgment as a matter of law on the merits of MedPro's claim. Specifically, AISLIC sought a declaration that: (1) there is no coverage for the extra-contractual damages claim

because the claim was not first made during the 2006 AISLIC policy period; and (2) coverage is precluded under exclusion M of the policy.

In March 2018, the district court granted summary judgment in favor of AISLIC, and the Clerk entered judgment. The court found that Exclusion M barred coverage of the extra-contractual liability claim. MedPro filed an appeal and was successful, leading to a remand of the case back to this Court.[1] The purpose of this Opinion and Order is to resolve any outstanding issues related to the previous summary judgment motions before proceeding further in this cause. To put the case in context, the Court will briefly recite some of the pertinent background facts, understanding that a more comprehensive version of the facts can be found in the district court's March 2018 opinion [ECF No. 85], and the Seventh Circuit's December 18, 2018, decision, *Med. Protective Co. of Fort Wayne , Ind. v. Am. Int'l Specialty Lines Ins. Co.*, 911 F.3d 438 (7th Cir. 2018).

**BACKGROUND**

In 2002, thirty-six-year-old Vicki Bramlett died from complications following routine surgery she underwent in Texas. Mrs. Bramlett's family sued Dr. Benny Phillips, the physician who performed the surgery, and the hospital and nurses who provide post-surgery care. MedPro was Dr. Phillips's malpractice insurer. MedPro twice declined to settle the case for $200,000, Dr. Phillips's insurance policy limit. The Bramletts' demand was based on a seminal Texas Supreme Court case, *G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex. 1929), under which an insurer is liable for any amounts

[1] This case was reassigned to the undersigned on May 1, 2019, for all further proceedings [ECF No. 104].

in excess of policy limits if it wrongfully rejects a plaintiff's demand within the policy limit that an ordinarily prudent insurer would have accepted. At the time the Bramletts made the *Stowers* demands, the hospital and its nurses had already settled with the Bramletts for $2.3 million.

At trial, a jury awarded a $14 million verdict against Dr. Phillips. While the case was on appeal, MedPro reported to AISLIC that there was a potential claim against it based on Texas law. AISLIC responded to the report, stating that no bad faith claim had yet been made against MedPro, and that it was reserving its rights. Later, in 2009, the Supreme Court of Texas capped Dr. Phillips's liability. The court, for the first time, also held that the Bramletts could pursue a direct claim against MedPro for the difference between the jury verdict and the statutory cap. Three days after the Texas Supreme Court decision, Mrs. Bramlett's family sued MedPro for the excess verdict. MedPro settled the claim. MedPro also settled with Dr. Phillips pursuant to a previous agreement to indemnify him.

AISLIC declined to cover MedPro's settlement with Mrs. Bramlett's family, leading MedPro to sue AISLIC for breach of contract.

## ANALYSIS

### A. Timing of the Claim

One of the arguments that AISLIC advanced in support of summary judgment was that the 2006 AISLIC policy did not cover the extra-contractual damages claim against MedPro because the claim was first made against MedPro before the policy incepted on July 1, 2006. The district court declined to address this argument because it found that

Exclusion M barred coverage of the Bramletts' extra-contractual liability claim, and granted summary judgment in favor of AISLIC on that ground. When MedPro filed an appeal, AISLIC again advanced the timing argument, as well as others.

The argument is as follows: in December 2004, MedPro's insured, Dr. Phillips, through his counsel: (1) accused MedPro of wrongfully rejecting two *Stowers* demands to settle the wrongful death lawsuit for Dr. Phillips's $200,000 policy limits; (2) argued that MedPro's handling of the matter made it liable for extra-contractual damages; and (3) demanded that MedPro settle the lawsuit, even if that meant paying more than Dr. Phillips's policy limits. This claim was asserted against MedPro thereafter on multiple occasions by counsel for both Dr. Phillips as well as the Bramletts.

AISLIC argued that, under these facts, a reasonable juror could reach only one conclusion: that the demand for extra-contractual damages against MedPro was a claim first made against MedPro prior to inception of the 2006 AISLIC policy, and therefore was not a claim "first" made against MedPro between July 1, 2006, and July 1, 2007.[2] It

---

[2] The policy provided, in relevant part:

**NOTICE: THIS IS A CLAIMS MADE FORM. EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED GENERALLY TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY WHILE THE POLICY IS IN FORCE . . . .**
*** * * ***

**INSURING AGREEMENTS**

**1. PROFESSIONAL LIABILITY**

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages resulting from any claim or claims first made against the Insured and reported in writing to the Company during the Policy Period for any Wrongful Act of the Insured or of any other person for whose actions the Insured is legally responsible, but only if such Wrongful Act occurs prior to the end of the Policy Period . . . .

argued that these same facts established that coverage is excluded under Exclusion M, which bars coverage for a claim for a Wrongful Act if any Insured, prior to purchasing insurance, knew or could have foreseen that such wrongful act could result in a claim or suit. AISLIC also asserted that Indiana's known loss doctrine precluded coverage.

The Court of Appeals, interpreting Exclusion M, agreed that the Bramletts' claim was foreseeable to MedPro. However, the question of foreseeability would only be reached if the trier of fact first found that MedPro committed a "Wrongful Act" by failing to settle with the Bramletts. On that issue, the Court of Appeals disagreed with the district court's ruling and determined that a genuine issue of fact existed. *Med. Protective Co.*, 911 F.3d at 447 ("MedPro argues that it handled the Bramletts' *Stowers* demands appropriately and that its rejection of the demands was not a Wrongful Act. A reasonable factfinder could agree."). The Court also rejected AISLIC's alternative argument under Indiana's known loss doctrine.

> When MedPro first contracted with AISLIC, the Bramlett-Phillips trial had not yet occurred, and no adverse or excess verdict had been rendered. Additionally, as we have discussed, it was unclear prior to June 30, 2005, as it remains today, whether MedPro is liable under *Stowers*. For these reasons, we cannot say that MedPro was facing a "virtually inevitable" loss prior to contracting with AISLIC, and therefore, the known loss doctrine does not apply.

*Id.* at 449.

This Court concludes that the Seventh Circuit's decision leaves no room for the conclusion that a reasonable juror would be required to conclude that MedPro submitted a claim before the policy was incepted on July 1, 2006. AISLIC's arguments on this matter were squarely before the Court of Appeals, yet the court proceeded directly to a

discussion of the Exclusion. AISLIC itself recognizes that whether a policy's insuring agreement generally provides coverage for a claim is a threshold issue that must be determined before exclusions are considered. The Court of Appeals would have surely recognized the same, thus giving its silence on the issue the same force as a rejection of it.

Additionally, an appellate court can affirm a district court's decision on any basis that appears in the record, *Marcus & Millichap Inv. Servs. of Chi. v. Sekulovski*, 639 F.3d 301, 312 (7th Cir. 2011), yet the Seventh Circuit remanded this case "for further proceedings consistent with this opinion," *MedPro*, 911 F.3d at 449. Had AISLIC's argument been meritorious, there would have been no basis to remand to this Court for the litigation to proceed.

Additionally, this Court's own consideration of the argument and the summary judgment record leads it to conclude that AISLIC is not entitled to summary judgment. The Court has no qualms with AISLIC's statement that, in a claims-made insurance policy, the term "claim" is universally understood to mean a "demand for money or property or some specific remedy." *Ins. Co. of Am. v. Dillon, Hardamon & Cohen*, 725 F. Supp. 1461, 1469 (N.D. Ind. 1988). However, the Court cannot agree that assertions by MedPro's insured, Dr. Phillips, plainly constituted a claim for which MedPro is seeking coverage under the policy. Nor were the oral settlement demands from the Bramletts' attorney arising out of their suit against Dr. Phillips claims for which MedPro sought policy coverage.

As this Court previously concluded, and the Court of Appeals affirmed, actions prior to June 30, 2005, should have alerted MedPro to the fact that a claim could be coming. However, the evidence does not establish that these actions constituted the claim. The Court is mindful that the coverage MedPro seeks under AISLIC's policy stems—not from any purported claim made by Dr. Phillips but—from the damages MedPro incurred when it settled the Bramletts' claim against MedPro in 2013.

The record contains sufficient evidence from which a finder of fact could conclude that MedPro's claim for breach of the policy is not based on a coverage request that is related to a "claim" first lodged against MedPro before the policy was incepted on July 1, 2006.

**B. Rescission**

An insured's material misrepresentation or omission of fact in the procurement of insurance can render the insured's coverage "voidable at the insurance company's option" because there can be no "meeting of the minds" as to the insured risk. *Foster v. Auto-Owners Ins., Co.*, 703 N.E.2d 657, 659 (Ind. 1998); *see also Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 672 (Ind. 1997). MedPro contends that AISLIC has no evidence to support its affirmative defense of rescission.

AISLIC's defense is based on the assertion that, during the underwriting process, MedPro provided AISLIC with a five-year loss history that did not disclose the extra-contractual damages claim previously made. The reference to an extra-contractual damages claim is a reference to the same demands from Dr. Phillips and the Bramletts that AISLIC cited as proof that the claim against MedPro was first made before the 2006

policy incepted. But the Court has already found that AISLIC has not established that these were claims.

Further, the evidence is that AISLIC struck questions related to potential claims, allegations, or circumstances during the 2006 renewal process because they were not relevant. *See Med. Protective Co.*, 911 F.3d at 444, 449 n7. Nothing in the underwriting file reveals a discrepancy in MedPro's applications, or that it failed to answer questions posed to it that touched on these matters. An insurance company issuing a claims-made policy to a new insured incurs the risk of covering potential claims "absent protective language in the policy application." *Nat'l Union Fire Ins. Co. v. Cont'l Ill. Corp.*, 673 F. Supp. 300, 304 (N.D. Ill. 1987).

Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "A district court should deny a motion for summary judgment only when the non-moving party presents admissible evidence that creates a genuine issue of material fact." *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (first citing *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010); then citing *Swearnigen–El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). AISLIC has not presented evidence from which a reasonable finder of fact could rely to find that it has a right to rescind the policy. Additionally, AISLIC has not followed the basic rule that a party seeking rescission must "first make a tender of the

full amount of premiums paid under the policy." *Am. Std. Ins. Co. v. Durham*, 403 N.E.2d 879, 881 (Ind. Ct. App. 1980); *see also Short v. N. Pointe Ins. Co.*, No. 1:11-cv-00545-SEB-MJD, 2013 WL 1828024, at *7–8 (Apr. 29, 2013).

**CONCLUSION**

Having considered the Seventh Circuit's opinion and having considered the remaining issues in the parties' summary judgment submissions, the Court concludes that this matter should proceed to trial on MedPro's Complaint, AISLIC's Amended Answer, and any Affirmative Defenses AISLIC intends to pursue, save the Eighth (Known Loss Doctrine) and Ninth (Rescission) Affirmative Defenses.

SO ORDERED on July 29, 2019.

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT