# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| THE MEDICAL PROTECTIVE COMPANY OF FORT WAYNE INDIANA, | |
| Plaintiff, | |
| v. | CAUSE NO.: 1:13-CV-357-HAB |
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, | |
| Defendant. | |

## OPINION AND ORDER

In this litigation, Plaintiff Medical Protective Company of Fort Wayne, Indiana (MedPro), has sued Defendant American International Specialty Insurance Company (AISLIC), now known as AIG Specialty Insurance Company, for breach of the terms of a 2006 policy AISLIC issued to MedPro (the Policy). MedPro alleges that AISLIC breached the Policy when it refused to cover MedPro's extra-contractual liability and eventual settlement of a third party's bad faith claim against MedPro.

This matter is set for a four-day jury trial to begin on January 28, 2020. Broadly speaking, the outstanding issues in this litigation include the following: first, whether the Policy provides coverage for MedPro's claim arising out of a bad faith claim brought against MedPro related to its handling of a medical malpractice claim against MedPro's insured, Dr. Benny Phillips, and; second, whether Exclusion M of the Policy applies resulting in the absence of coverage under the Policy. The second issue is not reached

unless MedPro first establishes that its claim falls within the insuring agreement. This Opinion sets forth the matters that are not in dispute, and do not require resolution by a jury.

## BACKGROUND

In 2002, thirty-six-year-old Vicki Bramlett died from complications following routine surgery she underwent in Texas. Mrs. Bramlett's family sued Dr. Phillips, the physician who performed the surgery, and the hospital and nurses who provided post-surgery care. MedPro insured Dr. Phillips for medical malpractice. MedPro twice declined to settle the Bramlett's case for the insurance policy limit, $200,000.

The first demand for settlement was made in December 17, 2003. A second demand was made on March 23, 2004. The Bramletts' demand for the policy limit was based on a seminal Texas Supreme Court case, *G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex. 1929), under which an insurer is liable for any amounts in excess of policy limits if it wrongfully rejects a plaintiff's demand within the policy limit that an ordinarily prudent insurer would have accepted.

In late August 2005, a jury awarded a $14 million verdict in favor of the Bramletts. In October 2005, the trial court entered a judgment in excess of the statutory cap. While the case was on appeal, MedPro reported to AISLIC that there was a potential claim against it based on Texas law. That was in 2007, just before the Policy was set to expire. AISLIC responded to the report, stating that no bad faith claim had yet been made against MedPro, and that it was reserving its rights.

Later, in 2009, the Supreme Court of Texas ruled that a statutory cap on liability damages applied to limit Dr. Phillips' exposure. The Texas Supreme Court, for the first time, also reconciled the statutory *Stowers* exception to the cap by holding that the *Stowers* exception was similar to a right to equitable subrogation. *Phillips v. Bramlett*, 288 S.W.3d 876, 882 (Tex. 2009). In other words, it put "the injured third party in the shoes of the insured to the extent the cap eliminates the insured's incentive to enforce the insurer's duty to settle with reasonable care." *Id.* As a result, the Bramletts could pursue a direct claim against MedPro for the difference between the jury verdict and the statutory cap. Three days after the Texas Supreme Court decision, Mrs. Bramlett's family sued MedPro for the excess verdict. MedPro settled the claim. MedPro also settled with Dr. Phillips pursuant to a previous agreement to indemnify him.

AISLIC declined to cover MedPro's settlement with Mrs. Bramlett's family, leading MedPro to sue AISLIC for breach of contract.

## ANALYSIS

"Insurance contracts are governed by the same rules of construction as other contracts, and the proper interpretation of an insurance policy, even if it is ambiguous, is generally a question of law appropriate for summary judgment." *Wellpoint, Inc. v. Nat'l Union Fire Ins. Co.*, 952 N.E.2d 254, 258 (Ind. Ct. App. 2011). Courts "review the contract as a whole, attempting to ascertain the parties' intent and making every attempt to construe the contract's language so as not to render any words, phrases, or terms ineffective or meaningless." *Bar Plan Mut. Ins. Co. v. Likes Law Office, LLC*, 44 N.E.3d 1279, 1285 (Ind. Ct. App. 2015) (internal quotation marks omitted). When terms are clear and

3

unambiguous, the court applies the plain and ordinary meaning of the terms and enforces the contract according to its terms. *Id.*

"Under Indiana law, an insurance policy is ambiguous if reasonable persons may honestly differ as to the meaning of the policy language." *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985). If there is an ambiguity in the contract, its terms should be interpreted most favorably to the insured and "to further the policy's basic purpose of indemnity." *Id.*

**A.   Relevant Policy Language**

MedPro's Policy with AISLIC stated, in relevant part:

> **NOTICE: THIS IS A CLAIMS MADE FORM. EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED GENERALLY TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY WHILE THE POLICY IS IN FORCE . . . .**
>
> \* \* \* \*
>
> 

**INSURING AGREEMENTS**

>
> **1. PROFESSIONAL LIABILITY**
>
> > To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages resulting from any claim or claims first made against the Insured and reported in writing to the Company during the Policy Period for any Wrongful Act of the Insured or of any other person for whose actions the Insured is legally responsible, but only if such Wrongful Act occurs prior to the end of the Policy Period and occurs solely in the rendering of or failure to render Professional Services.

(Policy, ECF No. 70-1 at 106.)

The Special Provisions section of the Policy included a provision, titled Loss Provisions, that required MedPro, "as a condition precedent to the availability of the rights provided under this policy" to "give written notice to the company as soon as practicable during the Policy Period . . . of any claim made against the Insured." (ECF No. 70-1 at 110.) However, a Special Reporting Clause provided:

> If during the Policy Period . . . . , the General Counsel, CEO or CFO shall become aware of any occurrence which may reasonably be expected to give rise to a claim against the Insured for a Wrongful Act which occurred during or prior to the Policy Period, and provided the Insured gives written notice to the Company during the Policy Period . . . of the nature of the occurrence and specifics of the possible Wrongful Act, any claim which is subsequently made against the Insured arising out of such Wrongful Act shall be treated as a claim made during the Policy Period.
>
> ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS SHALL REMAIN THE SAME.

(ECF No. 70-1 at 130.)

The Policy contained an exclusion (Exclusion M), which stated that the Policy did not apply:

> to any claim arising out of any Wrongful Act occurring prior to the inception date of the first Insurance Company's Professional Liability Insurance Policy . . . , if on such first inception date any Insured knew or could have reasonably foreseen that such Wrongful Act could lead to a claim or suit.

(ECF No. 70-1 at 108). Wrongful Act was defined as "any breach of duty, neglect, error, misstatement, misleading statement, omission or other act done or wrongfully attempted." (ECF No. 70-1 at 107.)

**B.     Timing of MedPro's Claim**

In defense of MedPro's breach of contract claim, AISLIC has argued that there is no coverage for the extra-contractual damages claim because the claim was not "first made" during the Policy period, July 1, 2006, to July 1, 2007. Rather, AISLIC argues, the demand for extra-contractual damages against MedPro was a claim first made against MedPro prior to inception of the 2006 AISLIC Policy.

It is undisputed that the Wrongful Act at issue—the rejection of the two *Stowers* settlement demands—occurred before the inception date of the Policy. That is not problematic for coverage, as the Policy applies to claims made on Wrongful Acts that occurred "prior to the end of the Policy Period." (Professional Liability provision, ECF No. 70-1 at 106.) Before its Policy expired, MedPro relied on the Special Reporting Clause, which permitted it to provide notice of an "occurrence[1] which may reasonably be expected to give rise to a claim against [MedPro] for a Wrongful Act which first occur[ed] . . . prior to the Policy Period." This provision would appear to supply coverage for the Bramletts' 2009 legal action *unless* MedPro had already lost the ability to obtain coverage under the Special Reporting Clause because, *prior to the policy period*, MedPro had become "legally obligated to pay . . . damages resulting from a claim" against it for the same Wrongful Act.

---

[1] The Policy does not define "occurrence" and the parties have not presented argument on its meaning.

6

Claim is not defined in the Policy. But that does not mean that the term is ambiguous, as "[t]he term claim is one of the commonest terms in the law." *Ins. Co. of Am. v. Dillon, Hardamon & Cohen*, 725 F. Supp. 1461, 1468 (N.D. Ind. 1988). In a claims-made insurance policy, the term "claim" is universally understood to mean a "demand for money or property or some specific remedy." *Ins. Co. of Am*, 725 F. Supp. at 1469; *see also* 3 Jeffrey E. Thomas, New Appleman on Insurance Law Library Edition § 16.07[5][b] (2014) (explaining that where the term "claim" is undefined in a claims-made policy, it "has generally been defined as a demand for money or services" and that a "frequently-quoted definition of 'claim'" is "an assertion of a legal right") (internal quotation marks omitted). This understanding of a claim is consistent with the Professional Liability coverage provision of the Policy, which only granted coverage for claims that "result[ed]" in "sums" paid "as damages." Further, the language is clear that those sums MedPro paid as damages had to be money it was "legally obligated to pay." The Court finds that under the plain wording of the Policy, considered as a whole, "a claim that a wrongful act has occurred is not the same thing as a claim for payment on account of a wrongful act." *MGIC Indem. Corp. v. Home State Sav. Ass'n*, 797 F.2d 285, 288 (6th Cir. 1986).

AISLIC has ignored this distinction. What AISLIC has identified as the "claims" first made were requests from Dr. Phillips' personal counsel that MedPro settle the underlying medical malpractice action on behalf of its insured and, thus, eliminate the need for trial. The identified letters express that failure to settle has already exposed the insured, as well as MedPro, to additional liability should a jury return a large verdict

7

against its insured. Dr. Phillips' counsel uses this potential exposure to put pressure on MedPro in support of his demand that MedPro settle the underlying litigation.

AISLIC does not explain how either Dr. Phillips or the Bramletts could have demanded money from MedPro in connection with the purported Wrongful Act before there was any judgment in the underlying medical malpractice litigation. There has been no assertion in the litigation before this Court that Dr. Phillips' medical malpractice policy contractually obligated MedPro to pay a specific amount toward settlement. MedPro has sought coverage from AISLIC for monies it paid in connection with an allegation that it negligently failed to settle the medical malpractice suit—an allegation that arises under Texas law, not under the parties' contractual obligations.[2]

Had MedPro proceeded to settle the Bramletts' claim against Dr. Phillips within its policy limits, MedPro would not have then had contractual grounds to seek coverage for that payment under its Policy with AISLIC. The Policy only provided coverage for amounts MedPro was "legally obligated" to pay "as damages" because it had engaged in activity (a Wrongful Act) that could be characterized as "breach of duty, neglect, error,

---

[2] A *Stowers* claim arises when an "insurer's negligent failure to settle results in an excess judgment against the insured." *Phillips v. Bramlett*, 288 S.W.3d 876, 879 (Tex. 2009). To plead a *Stowers* claim, the insured must allege: "(1) the claim is within the scope of coverage; (2) a demand was made that was within policy limits; and (3) the demand was such that an ordinary, prudent insurer would have accepted it, considering the likelihood and degree of the insured's potential exposure to an excess judgment." *Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 395–96 (Tex. 2016). "When these conditions coincide and the insurer's negligent failure to settle results in an excess judgment against the insured, the insurer is liable under the *Stowers* Doctrine for the entire amount of the judgment, including that part exceeding the insured's policy limits." *Phillips*, 288 S.W.3d at 879. Therefore, to plead a *Stowers* claim, the insured must allege the three elements giving rise to a duty and *Stowers* damages, i.e.—the difference between an excess judgment and policy limits. *See id.*

8

misstatement, misleading statement, omission or other act done or wrongfully attempted." (Definition of Wrongful Act, ECF No. 70-1 at 107.) Any such settlement payment would not have been made in connection with a breach of duty or other wrong that the Policy insured. Accordingly, under the plain language of the Policy, it is impossible to construe letters demanding that the medical malpractice case be settled as claims against MedPro for which it was obligated to provide notice to AISLIC.

AISLIC also relies on a post-verdict, pre-judgment, letter from another of Dr. Phillips' personal counsel. In that letter, dated September 20, 2005, counsel posed two options to MedPro: (1) protect Dr. Phillips from any excess judgment and continue to defend Dr. Phillips through appeal, or (2) refuse to defend and indemnify Dr. Phillips and risk an assignment of rights to the Bramletts so they could sue MedPro for the excess verdict. MedPro chose the first option. Accordingly, Dr. Phillips did not pursue any other contractual or extra-contractual remedies against MedPro.

This letter is not a claim for purposes of the Policy. It highlights how a claim might arise if MedPro refused to defend and indemnify Dr. Phillips. However, the letter itself does not make a demand for payment for which MedPro could then turn around and obtain coverage from AISLIC. The payment was not, at that point, one that MedPro was "legally obligated to pay as damages resulting from a[] claim" for bad faith or other error or omission. MedPro's response to indemnify Dr. Phillips eliminated the potential that he could make such a claim.

The Court concludes that, as a matter of law, a claim was not first asserted against MedPro for its failure to settle for policy limits before the Policy incepted on July 1, 2006.

9

Accordingly, the issue, and evidence purporting to prove that issue, should not be submitted to a jury.[3]

## C. Coverage for a Wrongful Act

The Court must address one additional coverage issue before trial. AISLIC contends that, for MedPro to establish coverage under the Policy, it must prove that the claim for which it seeks coverage is for a Wrongful Act, and that this requires proof of an actual Wrongful Act. The basis for AISLIC's position is that the Seventh Circuit's ruling with respect to Exclusion M of the Policy, *Med. Protective Co. of Fort Wayne, Ind. v. Am. Int'l Specialty Lines Ins. Co.*, 911 F.3d 438 (7th Cir. 2018), governs the coverage provision as well. The Court of Appeals ruled that the term Wrongful Act in the exclusion

---

[3] The parties may question the procedural propriety of this ruling. AISLIC previously moved for summary judgment on this very same coverage issue. MedPro disputed that AISLIC was entitled to judgment as a matter of law, but it did not itself request summary judgment on this issue despite offering a definition of a "claim" and arguing that if was not "first made" before the Policy period. MedPro also argued that it had met its threshold burden to prove coverage under the special reporting clause endorsement. Nevertheless, MedPro also stated that, because determining whether a demand constitutes a claim pursuant to a claims-made policy requires a fact intensive analysis to be conducted on a case by case basis, it was a jury question. The Court does not agree. Where, as here, the facts are not in dispute, and the interpretation of the policy language is a question of law, the Court finds that the issue need not be submitted to a jury. Further, the Court has considered, but rejected, the idea that fairness dictates that it permit further briefing on this issue. The coverage ruling goes against AISLIC, and it had a full opportunity to brief the issue during its previous request for summary judgment. This Court has already ruled that "[t]he record contains sufficient evidence from which a finder of fact could conclude that MedPro's claim for breach of the policy is not based on a coverage request that is related to a 'claim' first lodged against MedPro before the policy was incepted on July 1, 2006." (7/29/19 Opinion and Order 7, ECF No. 111.) The ruling the Court now makes, that no reasonable jury could conclude that MedPro's breach of contract is based on an assertion of coverage for a claim first made against it prior to the inception of the Policy, is the flip side of the same coin.
   The Court makes no determination whether MedPro has otherwise provided proper notice or met its threshold burden to establish coverage through application of the special reporting clause. The parties should be prepared to discuss the matter at the final pretrial conference.

referenced an actual Wrongful Act, and not merely a potential or alleged Wrongful Act. 911 F.3d at 447.

The Court does not agree with AISLIC's position. The Seventh Circuit's decision did not discuss the coverage provision. In fact, for purposes of its analysis, the court assumed that there was coverage under the 2006 Policy. In support of its interpretation that Exclusion M required an actual Wrongful Act, the court reasoned that including alleged or possible Wrongful Acts in the term would render meaningless the Special Reporting Clause, which specifically provides additional coverage for possible Wrongful Acts. 911 F.3d at 447. That was because the Special Reporting Clause referenced a "possible Wrongful Act" and permitted notice of an occurrence based on a Wrongful Act that has not yet given rise to a claim, but "may reasonably be expected to give rise to a claim" if a claim ultimately "aris[es] out of" the possible Wrongful Act. (Endorsement #16, ECF No. 70-1 at 130.) The interplay between these two provisions—both having to do with claims that had not yet been made—requires this harmonization.

The same cannot be said of the coverage provision. The coverage provision would not be rendered meaningless by the understanding that Wrongful Act extends to those acts that have merely been alleged, as opposed to proven. It applies to claims for which sums have been paid as damages. As long as the sums MedPro paid were a result of such claims, it matters not whether MedPro committed an actual Wrongful Act, or was merely accused of one.

Requiring that Wrongful Act be construed as an actual Wrongful Act each time it is referenced in the Policy would lead to absurd results. Due to the Seventh Circuit's

11

ruling, coverage may ultimately turn on whether MedPro committed an actual Wrongful Act. However, it is AISLIC, not MedPro that bears the burden of proving same.

**D.     Exclusion M**

Whether MedPro committed a Wrongful Act when it rejected the two settlement demands is still at issue. *Med. Protective Co. of Fort Wayne, Ind. v. Am. Int'l Specialty Lines Ins. Co.*, 911 F.3d 438, 447 (7th Cir. 2018) (holding that a reasonable factfinder could agree with MedPro's position that its rejection of the demands was not a Wrongful Act). Because the Seventh Circuit also held that the second inquiry under Exclusion M, foreseeability, was established as a matter of law, 911 F.3d at 448, the trier of fact will only need to determine whether MedPro committed an actual Wrongful Act when it failed to settle for the medical malpractice policy limits.

## CONCLUSION

For the reasons stated above, the Court finds that no reasonable jury could conclude that MedPro's breach of contract claim is based on an assertion of coverage for a claim first made against it prior to the inception of the Policy. If the pre-requisite question of coverage is established, AISLIC will have the burden to establish that MedPro committed a Wrongful Act when it did not settle the medical malpractice claim against its insured.

SO ORDERED on December 10, 2019.

                                                             s/ *Holly A. Brady*
                                                             JUDGE HOLLY A. BRADY
                                                             UNITED STATES DISTRICT COURT