UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| THE MEDICAL PROTECTIVE COMPANY OF FORT WAYNE INDIANA,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,<br><br>Defendant. | CAUSE NO.: 1:13-CV-357-HAB |

**OPINION AND ORDER**

In this litigation, Plaintiff Medical Protective Company of Fort Wayne, Indiana (MedPro or Plaintiff), has sued Defendant American International Specialty Insurance Company (AISLIC or Defendant), now known as AIG Specialty Insurance Company, for breach of the terms of a 2006 policy AISLIC issued to MedPro (the Policy). MedPro alleges that AISLIC breached the Policy when it refused to cover MedPro's extra-contractual liability and eventual settlement of a third party's bad faith claim against MedPro.

The matter is scheduled for a four-day jury trial. One of the issues previously identified for trial is whether MedPro has coverage under the Policy, as the pre-requisite issue had not been previously determined as a matter of law through dispositive rulings or by the decision of the court of appeals. Having now received the parties trial briefs and heard the argument of parties' counsel regarding the basis for coverage, it is apparent that a differing interpretation of the Amended Special Reporting Clause, Endorsement

#16, may unnecessarily confuse the presentation of the matter to a jury. *See Bar Plan Mut. Ins. Co. v. Likes Law Office, LLC*, 44 N.E.3d 1279, 1285 (Ind. Ct. App. 2015) (stating that interpretation and construction of contract provisions are questions of law).

The parties disagree on the legal interpretation of the Special Reporting Clause, which provides:

> If during the Policy Period . . . . , the General Counsel, CEO or CFO shall become aware of any occurrence which may reasonably be expected to give rise to a claim against the Insured for a Wrongful Act which occurred during or prior to the Policy Period, and provided the Insured gives written notice to the Company during the Policy Period . . . of the nature of the occurrence and specifics of the possible Wrongful Act, any claim which is subsequently made against the Insured arising out of such Wrongful Act shall be treated as a claim made during the Policy Period.
>
> ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS SHALL REMAIN THE SAME.

(ECF No. 70-1 at 130.)

AISLIC argues that the "occurrence which may reasonably give rise to claim against the Insured for a Wrongful Act" can only refer to the rejection of the *Stowers* settlement demands. Thus, if the CFO, General Counsel, or CEO became aware of the rejection during a different Policy Period, Plaintiff was required to provide notice during that Policy Period.

MedPro contends that "any occurrence" is sufficiently broad to encompass developments in the underlying malpractice litigation suggesting that the Texas courts might not enforce the damage cap for Dr. Phillips' case, which included the ruling from the Texas Court of Appeals.

Occurrence is not defined in the Policy, and this is not an occurrence-based policy. Thus, definitions from occurrence-based policies would not apply. The ordinary meaning of occurrence is "something that occurs" https://www.merriam-webster.com/dictionary/occurrence, or "something that happens; event; incident," https://www.dictionary.com/browse/occurrence#.

No matter how occurrence is defined, it must be something that the CFO, General Counsel, or CEO became aware of "during the Policy Period," and which was "reasonably" "expected to give rise to a claim against the Insured for a Wrongful Act." The Court first notes that the use of the phrases "[i]f during the Policy Period" and "shall become aware" work to imply that the occurrence is something that the CFO, General Counsel, or CEO first became aware of during the Policy Period.

The Seventh Circuit has already determined that if the failure to settle was a Wrongful Act, it was one that MedPro "could have reasonably foreseen" could lead to a claim or suit. Foreseeability, however, is broader than what is "expected to give rise to a claim." If a claim was foreseeable, it matters not for purposes of the Policy and the Reporting Clause that it was not expected until later. Coverage will still be denied, albeit under an exclusion and not for failure to submit notice of a potential claim.

On the other hand, even if a claim was foreseeable based on a particular Wrongful Act, an occurrence (happening of an event), such as failing to settle within Policy limits, might not reasonably be expected to give rise to a claim until further developments or occurrences, such as an excess judgment or a court decision pertaining to a statutory damages cap. It was not the failure to settle within Policy limits that alone gave rise to

the claim. It was merely one of the predicate events. When it became reasonable for MedPro to expect a claim may have turned on a culmination of occurrences. As long as any one of them became known to MedPro during the Policy Period, MedPro can argue that it formed the basis for the notice.

What the above discussion highlights is that the use of the undefined word "occurrence" in the Special Reporting Clause is subject to more than one reasonable interpretation and creates an ambiguity. As such, it must be construed against the Defendant as the insurer who drafted the Policy. "Even where clauses are unambiguous when read within the policy as a whole, but in effect provide only illusory coverage, the policy will be enforced to satisfy the reasonable expectations of the insured." *McGuire v. Century Sur. Co.*, 861 N.E.2d 357, 363 (Ind. Ct. App. 2007). Accordingly, MedPro is not limited to the rejection of the *Stowers* settlement demands—divorced from other developments— when reporting that an occurrence was reasonably expected to give rise to a claim.

## CONCLUSION

The Court, having now set forth its interpretation of the Amended Special Reporting Clause, will permit the parties an opportunity to address whether there are any disputed material issues of fact that require resolution by a finder of fact with respect to whether MedPro's June 2007 notice satisfied Endorsement #16.

SO ORDERED on January 16, 2020.

s/ *Holly A. Brady*  
JUDGE HOLLY A. BRADY  
UNITED STATES DISTRICT COURT