# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| THE MEDICAL PROTECTIVE COMPANY OF FORT WAYNE INDIANA, | |
| Plaintiff, | |
| v. | CAUSE NO.: 1:13-CV-357-HAB |
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, | |
| Defendant. | |

## OPINION AND ORDER

In this litigation, Plaintiff Medical Protective Company of Fort Wayne, Indiana (MedPro or Plaintiff), has sued Defendant American International Specialty Insurance Company (AISLIC or Defendant), now known as AIG Specialty Insurance Company, for breach of the terms of a 2006 policy AISLIC issued to MedPro (the Policy). MedPro alleges that AISLIC breached the Policy when it refused to cover MedPro's extra-contractual liability and eventual settlement of a third party's claim against MedPro based on MedPro's alleged breaches of duties owed to its insured, which were committed during MedPro's defense of a medical malpractice action against that insured. The breach of contract claim is scheduled for a jury trial to begin on January 28, 2020.

This matter is before the Court on the Stipulation [ECF No. 148] of the parties, filed on January 17, 2020.

# ANALYSIS

Interpretation and construction of contract provisions are questions of law. *Bar Plan Mut. Ins. Co. v. Likes Law Office, LLC*, 44 N.E.3d 1279, 1285 (Ind. Ct. App. 2015). When the facts of the case are not in dispute, what constitutes proper notice under a claims-made policy is a question of law for the court to decide. *Id.*; *see also Imperial Cas. & Indem. Co. v. Chi. Hous. Auth.*, 987 F.2d 459, 461 (7th Cir. 1993) ("If the facts surrounding notice are not disputed, a question of law is presented that may be answered on summary judgment.").

The Policy contained a Special Reporting Clause, which provides:

> If during the Policy Period . . . . , the CFO, General Counsel or CEO of the Insured shall become aware of any occurrence which may reasonably be expected to give rise to a claim against the Insured for a Wrongful Act which first occurs during or prior to the Policy Period, and provided the Insured gives written notice to the Company during the Policy Period . . . of the nature of the occurrence and specifics of the possible Wrongful Act, any claim which is subsequently made against the Insured arising out of such Wrongful Act shall be treated as a claim made during the Policy Period.
>
> ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS SHALL REMAIN THE SAME.

(ECF No. 148-1 at 28.) The parties have stipulated that the Policy, containing the above provision, is admissible.

On June 28, 2007, MedPro gave notice to AISLIC of a potential claim against it arising out of an underlying medical malpractice lawsuit in Texas against MedPro's insured, Dr. Phillips. The notice provided the basic facts of the medical malpractice action, and advised that MedPro had not settled two demands at the $200,000 policy

limits and that plaintiffs had suggested that MedPro had been "Stowerized" under Texas law. MedPro stated that a verdict for $11 million in compensatory damages and $3 million in punitive damages had been entered in August 2005, and that the case was on appeal to the Texas Supreme Court for the enforcement of the Texas wrongful death cap. The parties have stipulated that the June 28, 2007, General Liability Notice of Occurrence/Claim document with attachments is admissible.

In a verified response to an interrogatory asking MedPro to identify all facts supporting its contention that the Policy provides coverage for the extracontractual claim as alleged in its Complaint, MedPro stated the following:

> Tim Kenesey, the CEO of MedPro, became aware of an occurrence which reasonably may be expected to give rise to a claim for a Wrongful Act against MedPro in approximately March or April 2007 after the Texas Court of Appeals affirmed the trial court judgment in the Bramlett Malpractice Action with respect to the application of medical negligence cap, Medical Liability and Insurance Improvement Act of 1977 (TEX. REV. CIV. STAT. art. 4590i) (repealed) ("Article 4590i").

(ECF No. 148-3.) For purposes of the Stipulation, AISLIC does not dispute that Mr. Kenesey first became aware of the Texas Court of Appeals opinion during the Policy Period (July 1, 2006–July 1, 2007).

This Court previously determined that Endorsement No. 16, the Special Reporting Clause, is sufficiently broad to encompass developments in an underlying medical malpractice claim when reporting that an occurrence was reasonably expected to give rise to a claim. (1-16-20 Order, ECF No. 146.) MedPro was not, as AISLIC argued, limited to providing notice of when the General Counsel, CEO or CFO learned about MedPro's failure to settle within policy limits.

3

Given the Court's January 16, 2020, Order interpreting Endorsement No. 16, AISLIC stipulates and agrees that MedPro's submission of Trial Exhibit 51 complied with the requirements of Endorsement No. 16 as it has been interpreted by the Court. However, AISLIC objects to and preserves its appellate rights with respect to the Court's January 16, 2020 Order, and will make an offer of proof at trial based on an alternative interpretation of Endorsement No. 16.

## CONCLUSION

For the reasons stated above, the Court accepts the parties Stipulation [ECF No. 148], which will govern the presentation of evidence for purposes of trial. The Court finds that the Bramletts' lawsuit against MedPro in 2009 is deemed made during the July 1, 2006 – July 1, 2007, Policy Period because MedPro gave AISLIC timely and appropriate notice of an "occurrence" pursuant to the Special Reporting Clause. AISLIC has preserved its appellate rights with respect to this finding and will be permitted to make an offer of proof at trial.

SO ORDERED on January 21, 2020.

                                           s/ *Holly A. Brady*
                                           JUDGE HOLLY A. BRADY
                                           UNITED STATES DISTRICT COURT