# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| THE MEDICAL PROTECTIVE COMPANY OF FORT WAYNE INDIANA, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, <br><br> Defendant. | CAUSE NO.: 1:13-CV-357-HAB |

## OPINION AND ORDER

In this litigation, Plaintiff Medical Protective Company of Fort Wayne, Indiana (MedPro or Plaintiff), has sued Defendant American International Specialty Insurance Company (AISLIC or Defendant), now known as AIG Specialty Insurance Company, for breach of the terms of a 2006 policy AISLIC issued to MedPro (the Policy). MedPro alleges that AISLIC breached the Policy when it refused to cover MedPro's extra-contractual liability and eventual settlement of a third party's claim against MedPro.

The matter is scheduled for a four-day jury trial. This Opinion and Order addresses the parties' Motions in Limine [ECF No. 130, 131], which were presented in briefing to the Court and argued during the Final Pretrial Conference (FPTC) conducted on January 16, 2020. To the extent the scope of any requested motion in limine has evolved as a result of the FPTC or other rulings of this Court, the Opinion and Order is addressed to nature of the request following the Court's rulings.

District court judges have broad discretion in ruling on evidentiary questions presented before trial on motions in limine. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The district court's power to exclude evidence in limine derives from its authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) A motion in limine should only be granted where the evidence is clearly inadmissible for any purpose. *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997) (describing the motion in limine as tool that "permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury"). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

A.   **American International Specialty Insurance Company's Motion in Limine**

1.   *Bar MedPro From Referring to AISLIC as "AIG" or to AISLIC's Corporate Parent*

Defendant's corporate name at the time it issued the Policy to Plaintiff was AISLIC. In 2009, Defendant changed its name to Chartis Speciality Insurance Company. Shortly thereafter, Defendant's name became AIG Specialty. The title of Defendant's request suggests that Defendant aims to prevent witnesses from referencing Defendant as AIG, or, as anything other than AISLIC. But its argument is that "[a]ny mention of AISLIC's financial status, the fact that the financial holding company American International Group, Inc. ("AIG") is the parent company, or AIG's involvement in the financial crisis

of 2008 or the government's loan, will be highly inflammatory and prejudicial to AISLIC." (Mot. 1, ECF No. 130.)

At the FPTC, the Court confirmed that Defendant will be referencing itself as "American Speciality" or "AISLIC" throughout the course of the trial. Plaintiff indicated that it does not intend to elicit any testimony related to AIG's involvement in the financial crisis of 2008 or the government's loan. Additionally, MedPro agreed to make good faith efforts to refrain from referring to Defendant as AIG, and would instruct its witnesses of the same. To the extent Defendant's request suggests that it would be an error for any witness to use a valid corporate name associated with Defendant while testifying about matters pertinent to this case, the request is unwieldy and without basis. Therefore, Defendant's Motion in Limine #1 is denied.

## 2. *Bar Any Argument or Evidence Bearing on AISLIC's Purported Policy Breach*

This is a breach of contract action. However, Defendant argues that, because the only "disputed element" of Plaintiff's breach of contract action is whether Exclusion (m) of the Policy bars coverage, Plaintiff should be prohibited from offering argument or presenting evidence bearing on the purported breach. Rather, the case could be much simplified by use of a special verdict form for the disputed issue of fact, i.e., did MedPro commit an actual Wrongful Act. The Court would then apply the jury's finding to the law.

Plaintiff, who has requested a jury trial, does not agree with Defendant's approach. In a typical case, the jury, after receiving evidence and determining the facts, will be tasked with applying the facts to the law as provided in the Court's instructions. That the

factual issues impacting liability have been narrowed in advance of trial, with others already having been decided as a matter of law or not seriously disputed, does not eliminate the jury's role in determining the ultimate issue of liability and damages. Nor should a jury, even one that is not tasked with determining every element of a claim, be kept ignorant of the claim being alleged and the reason for its participation in the judicial process.

The Court does not find that the risk of confusion is so great in this case that it should restrict the role of the jury as requested by Defendant. The Court's instructions will direct the jury regarding its role in this case. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.") (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). Defendant's Motion in Limine #2 is denied.

3.  ***Bar Any Mention of AISLIC Policy Terms Other than Endorsement No. 16 and the "Wrongful Act" Definition***

Defendant's third Motion in Limine is premised on the proposition that the only factual issues to be resolved by the jury according to the Court's recent rulings, are: a) whether MedPro's failure to accept the Bramletts' policy limit demands was a "breach of duty, neglect, error, misstatement, misleading statement, omission or other act done or wrongfully attempted" and thus a "Wrongful Act," and b) whether MedPro complied with its obligations under the amended Special Reporting Clause set forth in Endorsement No. 16 of the AISLIC Policy. Defendant asserts that referencing provisions of the Policy other than the "Wrongful Act" definition and Endorsement No. 16 would

confuse the jury by incorrectly suggesting that the jury, rather than the Court, is empowered to interpret the policy or make legal determinations about coverage.

Since the filing of this Motion, the Court has ruled as a matter of law with respect to the application of Endorsement No. 16. Accordingly, that provision is no longer at issue. However, as this is a breach of contract case, the Court finds that the jury should be permitted to see the contract at issue. Although it will not be necessary to elicit testimony about most of its provisions, Defendant's request goes too far. Jury instructions are the appropriate means of focusing the jury's attention on the findings that are necessary to determine the breach of contract claim. Defendant's Motion in Limine #3 is denied.

4. *Bar Any Testimony or Evidence Bearing on Policy Interpretation, or Other Impermissible Legal Opinion Testimony*

Defendant asserts that evidence or opinion testimony, including from Plaintiff's witnesses, Defendant's underwriters or company representatives, or any expert regarding the purpose, meaning, or interpretation of any Policy terms is irrelevant and inadmissible. During the FPTC, it became clear that the testimony at issue concerns the understanding of Endorsement No. 16. Defendant argued that if there was any dispute regarding what Endorsement No. 16 means, that is a question for the Court to resolve. Defendant has also objected to the testimony of Plaintiff's expert on grounds that it is an improper legal opinion.

The Court generally agrees that contract interpretation is within the province of the Court. *See Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 471 (Ind. 1985) (noting that

"the construction of the ambiguous policy language should be resolved by the court as a matter of law"). To that end, as mentioned above, the Court has already ruled on the application of Endorsement No. 16 to the undisputed facts of this case [ECF Nos. 146, 150]. The Court will rule on the admissibility of the expert opinion testimony in a separate Opinion. Defendant's Motion in Limine #4 is denied.

5.  ***Bar Any Testimony, Evidence or Argument Relating to the Purported "Purpose" of the AISLIC Policy or MedPro's Expectations of Coverage***

Defendant argues that Plaintiff's purpose in purchasing the Policy or its expectations under the Policy are irrelevant and immaterial to the jury's consideration of whether Plaintiff committed a Wrongful Act.

The Court finds that testimony from Plaintiff's witnesses concerning the basis for its disagreement with Defendant's position is relevant in this breach of contract action. The jury will know, from the very beginning, that it is being tasked with resolving a dispute between the parties arising out of the Policy. Allowing witnesses to give voice to the general basis for the disagreement has probative value that will not be outweighed by the confusion of issues or unfair prejudice to Defendant.

The Court's jury instructions will clearly delineate which facts are for the jury to find, and how to apply those facts to the law. Motion in Limine #5 is denied.

6.  ***Bar Any Mention of the AISLIC Policy Premium Paid by MedPro***

Plaintiff paid almost $400,000 in premiums for the Policy and would like to elicit testimony about this fact at trial. Defendant argues that the amount of the premium is not

relevant to any of the issues before the jury, and that any alleged probative value would be outweighed by the confusion of issue and unfair prejudice.

Although it may not cause confusion to elicit testimony regarding premiums, the probative value of the amount of the premium appears to be substantially outweighed by the danger of unfair prejudice. Plaintiff can establish that there was consideration for formation of the contract with testimony that does not include the amount of the premium. In addition, the parties have already stipulated that the Policy is a valid contract. (Joint Trial Brief 2, ECF No. 139.) Defendant's Motion in Limine #6 is granted.

### 7. Bar Any Argument That the Texas Stowers *Standard Is Solely Determinative of Whether MedPro's Failure to Settle Was a "Wrongful Act"*

According to Defendant, the Texas *Stowers* standard is not controlling on the question of whether Plaintiff's failure to accept the Bramletts' policy limit demands was a Wrongful Act. Rather, because "Wrongful Act" is defined in the Policy as a "breach of duty, neglect, error, misstatement, misleading statement, omission or other act done or wrongfully attempted," Defendant can point to duties other than the Texas *Stowers* duty that Plaintiff owed to its insured, Dr. Phillips. Defendant asserts that an "error" that might not comprise a "breach of duty" can still comprise a "Wrongful Act" under the Policy.

Although the last statement is technically correct, it is not clear how it would be applicable to the facts *of this case*. The only action at issue was Plaintiff's failure to accept settlement demands for the Policy limits. *See, e.g.*, Def.'s Trial Br. 2 ("There is no dispute that the settlement of the 'claim' for which MedPro seeks coverage arises out of MedPro's

failure to accept two demand by the Bramletts—dated December 17, 2003 and March 23, 2004—to settle for the $200,000 limits of Dr. Phillips' policy with MedPro."). MedPro will be permitted to argue that a reasonably prudent insurer would have considered the legal landscape as it existed in Texas, the state where its insured was being sued for malpractice. Neither Dr. Phillips nor the Bramletts would have had any legal grounds to recover the amount of the verdict in excess of the statutory cap absent *Stowers*, which "is the only common law tort duty in the context of third party insurers responding to settlement demands." *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 776 (Tex. 2007) (responding to insurance company's argument that it was subrogated to the common law right of the insured to enforce its insurer's duty to act reasonably when handling an insured's defense).

Although "error" is included in the definition of a Wrongful Act, it cannot be said that every error by an insurance company has the potential to lead to a claim. The definition of a Wrongful Act also includes "or other act done." This expansive definition only highlights how the Wrongful Act must be something that actually led to a claim against MedPro. Citing to this expansive definition matters little outside the context of the particular claim at issue. The suit by the Bramletts is the only claim for which Plaintiff invoked its professional liability insurance policy with Defendant.

A review of the Seventh Circuit's decision shows that it did not frame up its consideration of whether MedPro committed a Wrongful Act by focusing on the definition. It focused on the facts that supported MedPro's argument that it handled the Barmletts' *Stowers* demands appropriately:

8

> Outside counsel believed that MedPro had not acted in bad faith by declining both *Stowers* demands in order to investigate the case, and MedPro's own counsel agreed. Moreover, there is some evidence that the largest medical malpractice verdict in the area at that time was $2 million— a similar verdict, or even a larger verdict (up to $2.5 million), would not lead to extra-contractual liability for MedPro, because the hospital had already agreed to pay $2.3 million. It was not until after MedPro declined to settle that several people, including Dr. Phillips's attorneys and a MedPro claims specialist, advised that there would be an adverse verdict and it was likely to be $3 million or over.

*Med. Protective Co. of Fort Wayne, Ind. v. Am. Int'l Specialty Lines Ins. Co.*, 911 F.3d 438, 447–48 (7th Cir. 2018). The Seventh Circuit then cited the following as evidence that pointed in the other direction:

> By the time the Bramletts made their second demand, MedPro knew of the damaging fact that Dr. Phillips had not immediately attended to Mrs. Bramlett because he went to exercise. By that time, the Bramletts had also submitted an expert report supporting Dr. Phillips's liability for their claim. In addition, MedPro knew that the hospital had settled for $2.3 million, presumably because it believed that the verdict could be adverse and large.

*Id.* at 448.

When the court of appeals then considered the foreseeability prong of Exclusion (m), it specifically referred to whether a *Stowers* claim was foreseeable. *Id.* ("As long as Dr. Phillips's *Stowers* claim was foreseeable, it was also foreseeable that he could have assigned the claim to the Bramletts. And Dr. Phillips's *Stowers* claim was, in fact, foreseeable."). The court noted that MedPro's belief regarding whether "it would be found liable under *Stowers*," was not relevant because it was "relevant only that there may be a claim at all." *Id.* at 449. In the context of Exclusion (m), as interpreted by the

9

Seventh Circuit, Wrongful Act requires that MedPro actually committed an act that would lead to a finding of liability.[1]

Plaintiff's liability for an excess judgment is all that has ever been at issue in this case. Plaintiff does not become liable for that excess judgment unless it first wrongfully rejected a demand within policy limits, which is necessarily determined by looking to the standard under *Stowers*. Defendant's Motion in Limine #7 is conditionally denied. It should be noted, however, that this Motion in Limine request was directed at what *MedPro* would be permitted to argue.

The Court's ruling does not prohibit Defendant from relying on the language of the Policy, particularly the definition of Wrongful Act, to argue that the Plaintiff's failure to settle within policy limits when it had the opportunity to do so was a Wrongful Act. Where reconciliation of the two arguments requires clarification, it is anticipated that the Court's instructions to the jury will provide that clarification.

8. ***Bar Any Discussion or Argument Based on AISLIC's Conduct or the Testimony of Any AISLIC Representatives or Witnesses***

Defendant argues that its conduct is not at issue in this case because the only question for the jury's consideration concerns Plaintiff's conduct. Accordingly, it "requests an order *in limine* barring [Plaintiff]'s attorneys, witnesses, agents, and anyone

---

[1] What does it mean to require that MedPro have committed an actual Wrongful Act, and not merely an alleged Wrongful Act unless the definition ("any breach of duty, neglect, error, misstatement, misleading statement, omission or other act done or wrongfully attempted") is analyzed within the context of another standard, such as *Stowers*? AISLIC must establish that MedPro would have been found liable under some legal standard for its failure to settle within policy limits when it had the opportunity to do so. AISLIC has not identified a legal standard other than the negligence standard of *Stowers* that can be applied in this case.

else from discussing, mentioning, alluding or referring to in any manner during trial or in the presence of the jury to any actions taken or not taken by [Defendant] or its affiliates, the testimony of any [Defendant] witnesses, former employees, or agents, and any litigation positions taken by [Defendant] or its affiliates in other disputes."

Defendant's request is overly broad. Plaintiff is alleging that Defendant breached its contract with Plaintiff. Accordingly, the actions of persons acting on behalf of Defendant are likely to be relevant, at least to some degree and for some purpose. However, Defendant's position in other litigation would not be probative of the issues in this case. Defendant's Motion in Limine #8 is granted in part and denied in part.

To the extent the real dispute underlying this request was whether Plaintiff can offer evidence of Defendant's response to its notice of a potential claim arising out of its handling of the Phillips malpractice litigation, that issue has been resolved by the Court's ruling that Plaintiff satisfied Endorsement No. 16, the Special Reporting Clause.

**B.     Plaintiff's Motion in Limine**

1.     *To Preclude Irrelevant and Unduly Prejudicial Evidence Regarding Alleged Prior "Claims" Against MedPro*

The essence of Plaintiff's Motion in Limine #1 is that Defendant should not be permitted to argue, or to introduce evidence, that the claim for which it seeks coverage was first filed against Plaintiff before the July 1, 2006, inception date of the Policy. Plaintiff's Motion is appropriate in light of the Court's rulings in this case [ECF Nos. 150, 152]. The reference to a claim in this case is understood to mean the Bramletts' 2009

11

lawsuit. Plaintiff's Motion in Limine #1 is granted. The ruling is not a restriction on the evidence that can be admitted, but on its characterization.

2.      *To Preclude Irrelevant and Unduly Prejudicial Evidence of the Jury Verdict and Judgment in the Bramletts' Malpractice Case Against Dr. Phillips and Other Matters in the Course of that Action After April 12, 2004*

Plaintiff seeks to exclude from evidence the medical malpractice judgment entered against Dr. Phillips, defense counsel's status reports and other correspondence authored after April 24, 2004 (the date the last *Stowers* demand was rejected), and John Bedingfield's February 24, 2005, internal email drafted after he attended mediation. Plaintiff asserts that none of this evidence is pertinent to the *Stowers* standard of care and, accordingly, to whether Plaintiff's failure to settle was a Wrongful Act.

A *Stowers* cause of action arises when an insurer negligently fails to settle a claim covered by an applicable policy within policy limits. *See G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929). The relevant inquiry is whether a demand within policy limits was such that an ordinary, prudent insurer would have accepted it, considering the likelihood and degree of the insured's potential exposure to an excess judgment. *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex. 1994). Under this negligence standard, how an ordinarily prudent insurer would respond to a settlement demand within policy limits considering the likelihood and degree of the insured's potential exposure to an excess judgment cannot be based on 20/20 hindsight. "In the context of a *Stowers* lawsuit, evidence concerning claims investigation, trial defense, and conduct during settlement negotiations is necessarily subsidiary to the ultimate issue of whether the claimant's demand was reasonable under the

12

circumstances, such that an ordinarily prudent insurer would accept it." *Coats v. Ruiz*, 198 S.W.3d 863, 882 (Tex. App. 2006) (citing *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 848–49 (Tex. 1994)).

*a.*     ***Jury Verdict***

There can be no dispute that the jury award in the medical malpractice case against Dr. Phillips takes into consideration facts that were not known to Plaintiff at the time it had the opportunity to settle in response to the *Stowers* settlement demands. The outcome of a jury trial can turn on a wide array of factors that a reasonably prudent insurer would have no reason to predict. For purposes of the Wrongful Act, the jury need only know that the Texas jury returned a verdict that exposed Dr. Phillips to personal liability in excess of his insurance coverage without revealing an amount that poses the risk of being unfairly prejudicial and leading to jury confusion. The motion in *limine* to preclude evidence of the dollar amount of the Texas jury's award to the Bramletts is granted.

*b.*     ***Status Reports and Correspondence Authored After April 12, 2004***

Although Defendant generally agrees that information Plaintiff learned after April 12, 2004, when the second *Stowers* demand was rejected, is not relevant, it objects to an unnecessarily restrictive view of the timing. For example, Defendant maintains that it should be permitted to elicit testimony regarding facts learned after April 12, 2004, if they were facts a reasonably prudent insurer would have discovered before rejecting the *Stowers* settlement demand.

The Court agrees that communications that occurred after April 12, 2004, may be admissible to highlight what was already known before that date. Additionally,

13

Defendant should not be prevented from presenting evidence bearing on how a reasonably prudent insurer would have responded to an early settlement demand, knowing that the opportunity would expire.

The Court's ruling is consistent with the district court's decision denying summary judgment in the Bramlett Direct Action. In determining that MedPro was not entitled to judgment as a matter of law, the court concluded that MedPro was aware of "facts that would enable a reasonable jury to find that a reasonably prudent insurer would have accepted the first *Stowers* demand." *Bramlett v. Med. Protective Co. of Ft. Wayne, Ind.*, No. 3:10-CV-2048-D, 2013 WL 796725, at *4 (N.D. Tex. Mar. 5, 2013). In doing so, the court focused on the evidence that showed what MedPro knew "at the time of the first *Stowers* demand." *Id.* However, the *Bramlett* decision also highlighted another reality of *Stowers* demands:

> There is no *per se* requirement that an insurer know all, or even most, of the facts of the case in order to have a *Stowers* duty. Indeed, early settlement is encouraged. *See* [Am. Physicians Ins. Exch. v.] *Garcia*, 876 S.W.2d [842,] 851 n.18 [(Tex. 1994)] ("If the claimant makes such a settlement demand early in the negotiations, the insurer must either accept the demand or assume the risk that it will not be able to do so later. In cases presenting *a real potential* for an excess judgment, insurers have a strong incentive to accept." (emphasis added)).

*Id.* at *4. Which facts a reasonably prudent insured would seek out before deciding whether a case presents a real potential for an excess judgment is fair argument in this case. Rather than bar potentially relevant evidence with a broad motion in *limine*, the Court will conditionally deny the motion, and defer ruling on specific evidentiary submissions until they are proposed at trial and proper objections are made.

c.  *John Bedingfield's February 24, 2005, email*

The Court finds that John Bedingfield's February 24, 2005, email is not relevant evidence of what Plaintiff knew before April 12, 2004. For example, it specifically references depositions that were not taken until after the *Stowers* demands had expired. Bedingfield is deceased, so he cannot be cross-examined regarding the basis for his statements and dissecting his email through other testimony would be wasteful and confusing. Additionally, the questionable probative value of the email is outweighed by the risk of unfair prejudice. Plaintiff's Motion in Limine #2 to bar admission of Bedingfield's email is granted.

3.  *To Preclude Evidence of Settlements and Mediation Communications*

Plaintiff seeks to preclude evidence of settlements and mediation communications in the course of the underlying medical malpractice case and in the Bramlett Direct Action. Plaintiff notes that the communications occurred after the *Stowers* demands had expired. MedPro does not object to evidence that it settled the Bramletts' Direct Action to show that it suffered a loss that it contends is covered under the Policy.

Defendant argues that Plaintiff's settlement offers in excess of its policy limits are a recognition that it messed up, i.e., committed a Wrongful Act. This appears strikingly similar to a request that the settlement be admitted to prove liability of a disputed claim, which is not permissible under Federal Rule of Evidence 408. The Advisory Committee Notes provide that

> exclusion may be based on two grounds. (1) The evidence is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position. The validity of this position will vary

15

as the amount of the offer varies in relation to the size of the claim and may also be influenced by other circumstances. (2) A more consistently impressive ground is promotion of the public policy favoring the compromise and settlement of disputes. McCormick §§ 76, 251. While the rule is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto. This latter situation will not, of course, ordinarily occur except when a party to the present litigation has compromised with a third person.

Fed. R. Evid. 408 (Advisory Committee Notes, 1972 Proposed Rules). The Court finds that the settlement offers are not admissible for the purposes Defendant offers. Plaintiff's Motion in Limine # 3 is granted. The Court will entertain individual proffers as they arise at trial if Defendant believes that permissible reasons for the admitting the settlement offers and discussions develop.

4. *To Preclude AIG From Relying on Any Evidence Not Disclosed In Discovery*

As no particular evidence is identified, the Court grants the request conditionally.

## CONCLUSION

For the reasons stated above, Defendant's Motion [ECF No. 130] in Limine Numbers 1, 2, 3, 4, 5, and 7 are denied. Motion in Limine Number 6 is granted, and 8 is granted in part and denied in part. Plaintiff's Motion [ECF No. 131] in Limine Numbers 1 and 3 are granted; Number 2 is granted in part and denied in part.

SO ORDERED on January 23, 2020.

    s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT