UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| THE MEDICAL PROTECTIVE COMPANY OF FORT WAYNE INDIANA, | |
| Plaintiff, | |
| v. | CAUSE NO.: 1:13-CV-357-HAB |
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, | |
| Defendant. | |

**OPINION AND ORDER**

In this litigation, Plaintiff Medical Protective Company of Fort Wayne, Indiana (MedPro or Plaintiff), has sued Defendant American International Specialty Insurance Company (AISLIC or Defendant), now known as AIG Specialty Insurance Company, for breach of the terms of a 2006 policy AISLIC issued to MedPro (the Policy). MedPro alleges that AISLIC breached the Policy when it refused to cover MedPro's extra-contractual liability and eventual settlement of a third party's claim against MedPro based on its alleged breach of a duty owed to its insured, Dr. Benny Phillips. The alleged breach was committed during MedPro's defense of a medical malpractice action against Dr. Phillips.

To resolve the breach of contract claim, the jury will need to decide whether MedPro committed a Wrongful Act as that term is defined in the Policy. The commission of such Wrongful Act is relevant to whether an exclusion in the Policy, Exclusion (m), bars coverage for MedPro's claim. The parties agree that MedPro's rejection of two settlement demands within policy limits is the alleged Wrongful Act. The settlement demands were based on a seminal Texas Supreme Court case, *G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex. 1929), under

which an insurer is liable to its insured for any amounts in excess of policy limits if it wrongfully rejects a plaintiff's demand within the policy limit that an ordinarily prudent insurer would have accepted.

Both parties hired an expert witness, and they provided their reports in 2015. MedPro's expert is Robert P. Gaddis. AISLIC retained Kevin M. Quinley. Each side has objected to the proposed testimony of the other's expert.

## ANALYSIS

**A.    Applicable Law**

The admissibility of expert evidence is governed by Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993), and its progeny. *See Winters v. Fru-Con Inc.*, 498 F.3d 734, 741 (7th Cir. 2007). Rule 702 provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

*Daubert* requires a district court to exercise a "gatekeeping" function to ensure that expert testimony is both reliable and relevant pursuant to Rule 702. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 824 (7th Cir. 2010); *see generally Daubert*, 509 U.S. at 589-92; *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607 (7th Cir. 2006); *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 505 (7th Cir. 2003). This inquiry applies not

2

only to scientific testimony, "but to all kinds of expert testimony." *United States v. Conn*, 297 F.3d 548, 555 (7th Cir. 2002) (noting that Rule 702 "makes no distinction between 'scientific' knowledge and other forms of specialized knowledge" (citing *Kumho Tire Co., Ltd.*, 526 U.S. at 149)). The reliability inquiry is fact-dependent and flexible; the district court is given "wide latitude in performing its gatekeeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012) (quoting *Bielskis Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011)).

But even if an expert's testimony is deemed reliable, it must be excluded if it is not relevant, which means under Rule 702 that it is not likely "to assist the trier of fact to understand the evidence or determine a fact in issue." *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996) (quoting *Daubert*, 509 U.S. at 592); *see also United States v. Gallardo*, 497 F.3d 727, 733 (7th Cir. 2007). Stated another way, "the suggested . . . testimony must 'fit' the issue to which the expert is testifying." *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002) (quoting *Porter v. Whitehall Labs. Inc.*, 9 F.3d 607, 614 (7th Cir. 1993)). If the proposed expert testimony satisfies the *Daubert* threshold of both relevance and reliability, "the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous crossexamination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Lapsley*, 689 F.3d at 805 (quoting *Daubert*, 509 U.S. at 596).

**B.     AISLIC's Objection to Testimony of Mr. Gaddis [ECF No. 118]**

At the time Gaddis offered his Report in March 2015, he had over forty-three years of experience in the insurance industry, either in the employ of insurance agencies or practicing as a licensed attorney. The latter includes being Board Certified in Personal Injury Trial Law by the

Texas Board of Legal Specialization, which includes an insurance law sector, for nearly twenty years.

As it pertains to the issues that remain for resolution in this case, Gaddis would offer testimony related to the *Stowers* doctrine in Texas, including the relevant considerations in rejecting or accepting a *Stowers* demand, and how the doctrine is used by practitioners during settlement negotiations.

AISLIC lodges two basic objections to Gaddis' testimony. First, it contends that Gaddis is not qualified to offer any opinions regarding insurance industry custom and practice on topics pertinent to the remaining issues in this case. Second, the opinions Gaddis offers invade the province of the jury or usurp the Court's role as the interpreter of the Policy and the law.

The text of Rule 702 expressly contemplates that an expert may be qualified by "knowledge, skill, experience, training, *or* education." Fed. R. Evid. 702 (emphasis added). Gaddis' experience includes his thirty plus years a trial lawyer in Texas as well as his prior employment in the insurance industry. That experience includes counseling clients in connection with professional malpractice claims and associated coverage issues. A significant portion of his law practice has been spent defending insurance agents in errors and omissions suits filed in Texas.

Contrary to AISLIC's argument, Gaddis need not be employed as a claims handler at an insurance company to offer his opinions regarding MedPro's handling of the Bramletts' *Stowers* demands. Gaddis' experience qualifies him to testify as an expert concerning settlement practices that occur during litigation of cases in Texas, including in those situations where the defendant has insurance coverage for the alleged tort. Moreover, throughout his Report, Gaddis connects his experience and knowledge of Texas claims handling practice to the facts of the Bramletts' case against Dr. Phillips. Should AISLIC wish to probe the manner in which Gaddis' experience and

practice informs his view of the reasonableness of MedPro's action, it may do so on cross-examination. *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1308 (7th Cir. 1987) (affirming a district court's rejection of a motion to bar an expert qualified on the basis of experience because "he did not explain the procedures he used," and holding that the court properly instructed that questions going to accuracy of testimony such as his "particular area of expertise" are "more appropriately addressed during cross-examination").

Additionally, Gaddis' testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. An explanation of the *Stowers* doctrine and how it is used in Texas litigation will help the jury determine if MedPro committed a Wrongful Act. AISLIC complains that Gaddis makes impermissible legal conclusions and opines on ultimate coverage issues. The Court does not agree that his testimony should be excluded on that basis.

"An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. Whether MedPro acted as a reasonably prudent insurer under the circumstances will assist the jury in determining whether MedPro committed a Wrongful Act, but Gaddis will not himself answer the question whether MedPro committed a Wrongful Act under the Policy. *Cf.* Fed. R. Evid. 704, Advisory Committee Notes, 1972 Proposed Rules (differentiating between the excludable question "Did T have capacity to make a will?" and the admissible question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?"); *Fed. Ins. Co. v. Arthur Andersen, LLP*, No. 1:03CV01174, 2006 WL 6555232, at *3 (N.D. Ill. Jan. 18, 2006) (explaining that "[e]vidence relating to the insurance industry's custom and practice of claims handling" is relevant and helpful to the jury, but barring testimony "as to the ultimate issues of whether [an insurer] breached its duty").

5

As MedPro has noted, expert testimony in insurance coverage cases may at times sound like a legal conclusion where professional duties of the expert "required an understanding of the applicable laws and the ways in which their interpretation by the courts affects the insurance business." *See Suter v. Gen. Accidental Ins. Co. of Am.*, 424 F. Supp. 2d 781, 792 (D.N.J. 2006). "Opinions that are based on this type of generalized understanding of the laws affecting a single business or industry are not necessarily the types of legal conclusions sought to be excluded from evidence." *Id.* So too here. That *Stowers* is itself a legal doctrine does not convert an opinion set in the context of that doctrine into an impermissible instruction to the jury on how to apply the facts of the case to the law.

The Court overrules AISLIC's objections to the expert opinion testimony of Gaddis.

**C.     MedPro's Objection to Testimony of Kevin Quinley [ECF No. 119]**

Quinley's stated area of expertise is insurance claims handling, including for medical malpractice claims. Quinley has opined on whether MedPro knew or could have reasonably foreseen on or before June 30, 2005, that its handling of the Bramlett medical malpractice claim could lead to a claim against MedPro. This language tracks Exclusion (m), which AISLIC has invoked to bar coverage. The Seventh Circuit has already decided that the filing of a claim against MedPro for failing to settle two settlement demands within policy limits was foreseeable. Therefore, evidence that addresses foreseeability will not be presented to the jury. The jury will, however, be tasked with deciding whether the failure to settle was an actual Wrongful Act. Accordingly, AISLIC seeks to admit Quinley's opinions related to MedPro's handling of the settlement.[1]

---

[1] Quinley's opinions on when a claim was first made against MedPro arising out of its handling of the medical malpractice litigation are also no longer relevant to the issues to be tried. This Opinion and Order does not address those opinions.

MedPro argues that Quinley is not qualified to provide an opinion whether MedPro committed an actual Wrongful Act under the Policy because whether MedPro's actions were wrongful will be determined by reference to the applicable state law (Texas) and claims handling practices in that state. Therefore, it is problematic that Quinley does not couch his opinions in light of the applicable laws and, in fact, admitted that he did not reach an opinion on whether MedPro wrongfully rejected the two *Stowers* demands.

Just as the Court held above with respect to Gaddis, the Court finds that, should MedPro wish to question Quinley about the manner in which his experience and his understanding of customs, practices, and standards within the insurance claim industry form his view of the reasonableness of MedPro's actions, it may do so on cross-examination. *See Rogers*, 834 F.2d at 1308. For purposes of determining whether Quinley's opinion is based on adequate facts and reliable principles, it is sufficient that Quinley connects his claims handling experience to the facts of the Bramletts' case against Dr. Phillips and the settlement demands made in that case. His review and analysis "concentrates on the question, 'What did MedPro know and when did it know it?' regarding an extracontractual claim or potential claim against it?" (Quinley Report 6, ECF No. 62-4 at 7.)

Quinley offers some opinions that may assist the trier of fact. He opines that MedPro had reason to know that the Bramlett case was a catastrophic loss with extracontractual liability potential before the first AISLIC policy incepted on June 30, 2005. Although Quinley's consideration of events up to the inception of the 2005 policy is well beyond the expiration of the *Stowers* settlement demands, not all his observations necessarily require exclusion. The facts known to MedPro before April 14, 2004, are pertinent to whether an ordinarily prudent insurer, i.e., a claims professional, would have accepted the demands within the policy limits. Quinley can

testify as to how those facts should have informed the claims handling decision according to claims handling customs, practices, and standards. To the extent the opinion in his report was limited to whether a claim was foreseeable, as opposed to whether it would ultimately prove to have merit, that goes to the weight of the testimony. The Court does not think the distinction means that the testimony no longer has any ability to assist the trier of fact to understand the evidence or to determine a fact in issue. In other words, while Quinley's ultimate conclusion is no longer pertinent to the issues to be tried, some parts of the analysis leading to the conclusion still have relevance.

The Court also finds that it matters not that Quinley did not consider the definition of a Wrongful Act when rendering his opinions. He did not purport to offer an opinion on whether MedPro committed a Wrongful Act as that term is identified in the Policy. A jury will determine, based on the instructions from the Court, whether MedPro committed a Wrongful Act when it rejected the two *Stowers* demands.

The Court overrules MedPro's objections to the expert opinion testimony of Quinley.

## CONCLUSION

For the reasons stated above, the Court overrules the parties' objections to the testimony of Robert P. Gaddis and the testimony of Kevin M. Quinley. The Court sustains the objections to the extent they seek to preclude Gaddis and Quinley from testifying regarding when a claim was first made and the foreseeability of the claim. Those issue have been resolved as a matter of law.

SO ORDERED on January 24, 2020.

                                        s/ *Holly A. Brady*
                                        JUDGE HOLLY A. BRADY
                                        UNITED STATES DISTRICT COURT