UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| THE MEDICAL PROTECTIVE COMPANY OF FORT WAYNE INDIANA,<br><br>    Plaintiff,<br><br>    v.<br><br>AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,<br><br>    Defendant. | CAUSE NO.: 1:13-CV-357-HAB |

**OPINION AND ORDER**

On January 31, 2020, a jury returned a verdict in favor of Plaintiff Medical Protective Company of Fort Wayne, Indiana (MedPro or Plaintiff), and against Defendant American International Specialty Insurance Company (AISLIC or Defendant), now known as AIG Specialty Insurance Company. MedPro initiated the litigation in this Court in December 2013 for breach of contract after AISLIC, who insured MedPro under a "claims made" professional liability policy, refused to cover MedPro's extra-contractual liability and eventual settlement of a third party's bad faith claim against MedPro. That third party was the family of Vicki Bramlett, who died after undergoing a routine surgery performed by MedPro's insured, Dr. Benny Phillips. The Bramletts successfully sued Dr. Phillips for medical malpractice in Texas, recovering an amount well in excess of Dr. Phillips medical malpractice insurance policy limit.

AISLIC now moves for a new trial pursuant to Federal Rule of Civil Procedure 59 (ECF No. 179). AISLIC's Motion advances two issues: Whether the verdict was against the manifest weight of the evidence; and whether errors in the admission or exclusion of evidence had a

substantial and injurious impact on the jury's verdict. The Court answers each inquiry in the negative.

## STANDARD OF REVIEW

Rule 59(a) permits a trial court judge to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). As the Seventh Circuit has put it, a new trial may be granted where "the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Mid–Am. Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1367 (7th Cir. 1996) (citations and internal quotations omitted). However, the Court must be mindful that the imprecise "interest of justice standard," when read literally to

> give the judge carte blanche to set aside a jury verdict . . . can't be right; a judge can't set aside a jury verdict just because had he been a member of the jury he would have voted for a different verdict. Such a power would emasculate the jury system.

*Prime Choice Servs., Inc. v. Schneider Logistics Transloading & Distrib., Inc.*, 861 F.3d 633, 635 (7th Cir. 2017). Accordingly, "a judge is permitted to grant a new trial because the jury's verdict was against the weight of the evidence 'only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict cries out to be overturned or shocks our conscience.'" *Id.* (quoting *Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir. 1995) (ellipsis omitted)).

### A.   Manifest Weight of the Evidence

Although AISLIC had asserted numerous defenses before trial, only one defense, based on an exclusion in the policy with MedPro, remained for resolution at trial. AISLIC argues that, based on the evidence presented at trial, no rational jury could have concluded that MedPro's rejection of the Bramletts' policy limit demands was not a "breach of duty, neglect, error [or] omission." (Mot. 9 (citing the insurance policy's definition of Wrongful Act).) As proof, AISLIC lists the

facts that MedPro was aware of as of March 23, 2004, the date the Bramletts made their second, and final, policy limit demand to MedPro.

The Court has no quarrel with these facts, or with the assertion that they could have supported a verdict in favor of AISLIC on the issue of whether MedPro committed a Wrongful Act as defined in the insurance policy. However, the facts did not *require* such a conclusion after consideration of all the evidence in the record. AISLIC's one-sided presentation of the facts is just that—one-sided. The jury, of course, heard counter points relevant to the very same factual issue. The substantive issue for the jury to decide was described in the instructions as follows:

> MedPro's professional liability policy with American Specialty provides insurance coverage for MedPro's settlement of the Bramletts' 2009 lawsuit against MedPro unless Exclusion (m) precludes coverage. Pursuant to Exclusion (m), the policy does not apply to a Wrongful Act if it occurred before June 30, 2005, the date the first policy was issued by American Specialty to MedPro. The sole issue for you to decide is whether American Specialty has proved by a preponderance of the evidence that MedPro committed a Wrongful Act when it did not accept the Bramletts' December 2003 or March 2004 $200,000 policy limit demands in settlement of the Bramletts' malpractice case against Dr. Phillips.
>
> The term "Wrongful Act" is defined in the policy as "any breach of duty, neglect, error, misstatement, misleading statement, omission or other act done or wrongfully attempted."
>
> In deciding whether MedPro committed a Wrongful Act, you should consider that an insurer defending a policyholder in Texas has certain duties when responding to settlement demands that are within policy limits. An insurer has a duty to exercise that degree of care and diligence that an ordinarily prudent person would exercise in the management of his own business. An insurer violates that duty if it does not accept a settlement that is within policy limits if an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to a judgment that exceeds the policy limits.
>
> When deciding whether the failure to accept either of the settlement offers was a Wrongful Act, you should consider only what information was available to MedPro before the settlement demands expired. It is not necessarily a failure to exercise ordinary care merely because a decision proves in hindsight to be wrong by reason of a jury verdict.

(Jury Instr. No. 15, ECF No. 173.) When the evidence is viewed in the light of what an ordinarily prudent person in the management of his own business would do, there can be no doubt that the jury had ample evidence to consider on both sides.

Indeed, the Seventh Circuit already recognized that a trier of fact would have much to consider on both sides of this very issue, and in this very case. *Med. Protective Co. of Fort Wayne, Ind. v. Am. Int'l Specialty Lines Ins. Co.*, 911 F.3d 438, 447 (7th Cir. 2018) (finding that the evidence presented at the summary judgment stage revealed a genuine factual dispute as to whether MedPro committed a Wrongful Act). Addressing MedPro's evidence first, the court stated:

> MedPro argues that it handled the Bramletts' *Stowers* demands appropriately and that its rejection of the demands was not a Wrongful Act. *A reasonable factfinder could agree*. Outside counsel believed that MedPro had not acted in bad faith by declining both Stowers demands in order to investigate the case, and MedPro's own counsel agreed. Moreover, there is some evidence that the largest medical malpractice verdict in the area at that time was $2 million—a similar verdict, or even a larger verdict (up to $2.5 million), would not lead to extra-contractual liability for MedPro, because the hospital had already agreed to pay $2.3 million. It was not until after MedPro declined to settle that several people, including Dr. Phillips's attorneys and a MedPro claims specialist, advised that there would be an adverse verdict and it was likely to be $3 million or over.

*Id.* at 447–48 (emphasis added). The court continued:

> To be sure, *there is also evidence pointing in the other direction*. By the time the Bramletts made their second demand, MedPro knew of the damaging fact that Dr. Phillips had not immediately attended to Mrs. Bramlett because he went to exercise. By that time, the Bramletts had also submitted an expert report supporting Dr. Phillips's liability for their claim. In addition, MedPro knew that the hospital had settled for $2.3 million, presumably because it believed that the verdict could be adverse and large.

*Id.* at 448 (emphasis added). That MedPro ultimately turned out to be wrong in its assessment of the Bramletts' case against Dr. Phillips did not perforce require that the jury determine that it was more probably true than not that MedPro committed a Wrongful Act under the policy. The

previously identified genuine factual dispute was appropriately submitted for resolution to a jury after the presentation of evidence by competent counsel on both sides.

In presenting this case, the jury was assigned a distinct task. The Special Verdict Form reduced that task to a Yes or No answer to the following question: "Was MedPro's rejection of either of the Bramletts' demand to settle the malpractice claim against Dr. Phillips for Dr. Phillips' $200,000 police limit a Wrongful Act?" (Special Verdict Form, ECF No. 174.) The parties' closing arguments clearly focused on the determinative issue, with each party highlighting the evidence admitted at trial that favored its position on the reasonableness of MedPro's decision not to settle the Bramletts' medical malpractice claim against its insured during the discrete timeframe in question. The Court has no reason to believe that the jury did not perform its duty as "impartial judges of the facts" to "give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that [was] consistent with the individual judgment of each juror." (Jury Instr. No. 18.) The verdict in favor of MedPro was not against the manifest weight of the evidence any more than a verdict in favor of AISLIC would have been against the manifest weight of the evidence.

**B.     Evidentiary Rulings**

AISLIC's Motion asks the Court to revisit several of its pretrial and trial rulings, arguing that the exclusion or admission of certain evidence had a substantial and injurious effect or influence on the jury's verdict and deprived AISLIC of a fair trial. For the reasons explained below, the Court disagrees.

   *1.     Policy Language Interpretation*

Throughout the course of summary judgment briefing, on appeal, and leading up to trial, various provisions of the insurance policy were implicated by MedPro's breach of contract claim

and AISLIC's defense to the claim. It became apparent, however, that many of the disputes regarding those provisions were not based on competing or disputed facts. Rather, resolution required interpretation of the insurance contract which, in Indiana, is a question of law for the court. *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010) (citing *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992)); *see also Bar Plan Mut. Ins. Co. v. Likes Law Office, LLC*, 44 N.E.3d 1279, 1285 (Ind. Ct. App. 2015) (stating that interpretation and construction of contract provisions are questions of law).

Indeed, AISLIC had itself requested that summary judgment be granted in its favor based on its interpretation of the contract, including when a claim had first been made against MedPro. Despite this, AISLIC now claims that the Court's findings as a matter of law on that very issue was procedurally improper. The Court previously addressed the procedural propriety of its ruling, noting that AISLIC had a full opportunity to brief the issue in the context of its request for summary judgment. Moreover, even after the Court issued its decision in favor of MedPro, AISLIC submitted an Offer of Proof [ECF No. 145], setting forth the evidence and testimony that it would introduce at trial on the issue of whether a claim was first made against MedPro for its failure to settle the malpractice action prior to July 1, 2006. On January 16, 2020, the Court also heard the argument of counsel for both parties as it pertained to the offer of proof and the claims first made issue. The Court issued an Amended Opinion and Order [ECF No. 152] on January 22, 2020, and AISLIC does not suggest that there is any evidence that the Court failed to consider or that AISLIC did not have an opportunity to present.

Likewise, with respect to its ruling on whether MedPro satisfied a special reporting provision, the Court interpreted the contract provision, and then permitted the parties to address whether there were any disputed material issues of fact that required resolution by a finder of fact

with respect to whether MedPro's June 2007 notice satisfied that provision. (*See* ECF No. 146.) The parties then stipulated to the facts that would have been adduced at trial, and agreed that, under the Court's interpretation, MedPro complied with the reporting provision. (*See* ECF No. 148.) AISLIC preserved its right to appeal the Court's interpretation and made an offer of proof during trial.

AISLIC's disagreement with the Court's interpretations are an issue for appeal. If the court of appeals determines that the threshold legal issue of whether the insuring agreement provided coverage for MedPro's claim should have been decided against MedPro and in favor of AISLIC, that will end the case.[1] If the court of appeals agrees with the Court's analysis of the coverage issue, the matter will have properly proceeded to the jury for a decision on the policy exclusion, Exclusion (m).

## 2. *Expert Testimony*

AISLIC asserts that it was deprived of a fair trial when MedPro's expert witness, Robert Gaddis, suggested to the jury that the policy limit settlement demands made by the Bramletts' attorney, Alex Klein, were invalid under Texas law. AISLIC also reiterates its argument that Gaddis should not have been permitted to testify as an expert because he was not qualified to offer opinions regarding insurance industry custom and practice as it relates to insurance handling and evaluation of settlement demands.

The Court will not revisit its Rule 702 ruling. As to AISLIC's assertion that Gaddis offered testimony that suggested "an ultimate conclusion about the purported invalidity of the demands

---

[1] When this case was previously before the court of appeals, the district court had disposed of the case without addressing when the claim against MedPro was first made or whether there was coverage pursuant to the special reporting clause. Accordingly, the court of appeals expressed no opinion on those coverage issues.

made by the Bramletts' attorney under Texas law based on their timing" (Mot. 12), the Court finds no basis to grant a new trial.

AISLIC takes issue with Gaddis's testimony that the Bramletts' attorney should have granted MedPro more than seventeen days to accept the March 23, 2004, policy limit settlement demand, or waited until later in the malpractice litigation to make the demands. AISLIC argues that the question for the jury was not whether the Bramletts' attorney might have committed legal malpractice because he should have made the policy limit demands at a different time or with a longer response deadline. Rather, the issue was the standard of care for the recipient of the policy limit demands and whether MedPro's claims adjuster was wrong in not accepting the demands. AISLIC finds it significant that MedPro did not present any evidence that it rejected the demands based on some purported invalidity of those demands. Instead, according to AISLIC, the evidence showed that MedPro rejected both demands for reasons unrelated to their timing—namely, that it either believed Dr. Phillips would not be held liable or that additional discovery was necessary to better evaluate the demand.

The Court finds AISLIC's line of argument problematic. First, AISLIC asserts that the timing of the demand was not relevant, but then cites to MedPro's reasons for declining to settle, both of which were impacted by the timing of the offers. Second, it puts a spin on Gaddis's opinion that it cannot reasonably be suggested that the jury shared. As AISLIC's statements allude, there was a great deal of testimony regarding the reasons MedPro did not accept the settlement demands. The Bramletts' attorney, Alex Klein, testified regarding his strategy of the case and the decision when to make the settlement demands. That Gaddis would opine that the lawyer who makes an early settlement demand, which he does not later follow with additional demands as the litigation proceeds, is potentially gambling that his client will not later be successful on an extra-contractual

8

claim to recover from the insurance company is not particularly surprising or controversial. Gaddis testified that his own practice was to wait until after discovery had been completed, unless the case was open-and-shut or there were very low policy limits. However, he also confirmed that MedPro counsel was correct when she asserted: "[T]here's no legal obligation for a plaintiff's attorney to issue multiple Stowers demands. They can issue one and say that's it, we're going to trial, right?" (Trial Tr. Vol. III-146, ECF No. 179-5 at 146.) Gaddis did not, contrary to AISLIC's argument, make any statements to suggest that Klein committed legal malpractice or that his settlement demands were invalid.[2]

On the other side, AISLIC was free to argue, and did argue, that MedPro had all the information it needed to determine that Dr. Phillips could be facing a verdict in excess of his policy limits and that, if it was missing information it could have known, MedPro's own inadequate development of the claims file was to blame. In AISLIC's framing of the case, MedPro unreasonably failed to protect its policyholder. It was for the jury to consider the testimony it heard in context with the ultimate issue for its resolution as set forth in the Court's instructions, which the Court can presume the jury followed. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury

---

[2] As Klein explained in his testimony, the *Stowers* doctrine is not for the protection of malpractice victims. It is intended to protect insureds' from poor decisions by their insurance companies. Thus, if Klein did not make a demand that would trigger *Stowers*, he could not have been accused of committing malpractice in connection with his representation of the Bramletts. Likewise, Kevin Quinley, the expert who testified on behalf of AISLIC, also testified that the *Stowers* doctrine captured the fundamental idea that an insurance company has a duty to protect its policyholder and not to gamble with the policyholder's financial future.

Curiously, AISLIC also contends that Gaddis offered testimony on a legal conclusion when he suggested to the jury that the policy limit demands by the Bramletts' attorney were invalid. Although the Court does not characterize Gaddis's testimony as an impermissible legal conclusion, the Court wonders how AISLIC would characterize its own expert's testimony. Quinley testified that MedPro breached its duty to its insured when it failed to accept the policy limit settlement demand in April 2004 because, under the circumstances, any reasonable insurer would have settled the case.

is presumed to follow its instructions.") (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). The Court does not find that Gaddis's statements improperly turned the focus away from the issue decided by the jury, or that his statements confused and misled the jury.

### 3. *Nature of the Coverage Dispute*

AISLIC argues that it was unfairly prejudiced when MedPro was permitted to introduce evidence and argument regarding the parties' coverage dispute, namely, that MedPro was contending that AISLIC wrongfully denied MedPro's claim. AISLIC asserts that this distracted the jury from a fair evaluation of the Wrongful Act issue. According to AISLIC, because the jury was only to evaluate MedPro's conduct, any discussion of AISLIC's duty to provide coverage substantially confused and misled the jury.

The prevailing discussion throughout the entirety of the four-day trial was whether MedPro failed to act as a reasonable insurer when it did not accept the policy limit settlement demands in the malpractice action against Dr. Phillips. The Court cannot agree that there is any basis to support the speculative belief that the jury was so lacking in comprehension skills that it could not differentiate its ultimate decision from the context of the litigation as a whole. The jury was aware even before the presentation of either side's case that the matter involved two insurance companies. During voir dire, counsel expressly addressed the nature of the case as one for breach of contract where one insurance company was claiming coverage, and the other was relying on an exclusion to deny coverage. In opening, AISLIC argued that the case was about MedPro trying to get AISLIC to pay for a mistake MedPro made before it ever purchased insurance from AISLIC. Additionally, the jury instructions included a statement that informed the jury that MedPro's professional liability policy with AISLIC provided insurance coverage for MedPro's settlement of the Bramletts' 2009 lawsuit against MedPro unless Exclusion (m) precluded coverage.

10

Accordingly, rather than a being a source of confusion, the limited testimony and argument that AISLIC claims was unfair prejudice was rightfully part of the broader picture of the case. A trial is an adversarial proceeding. Failing to sanitize the presentation of the case in a manner that would prevent an accusation that AISLIC breached its duty to MedPro did not deprive AISLIC of a fair trial or otherwise induce the jury to decide the case on an improper basis.

### 4.    *Verdict Against Dr. Phillips*

AISLIC argues that it was substantially prejudiced in its presentation of evidence when it was not permitted to elicit testimony regarding the size of the malpractice judgment against Dr. Phillips, as well as the jury's allocation of fault. AISLIC claims that this information is probative of whether MedPro erred in failing to settle for the $200,000 policy limits.

The Court finds that a new trial is not warranted to permit the introduction of these details. Through the presentation of the case, the jury heard that MedPro was mistaken about Dr. Phillips's potential liability, and that the verdict against him exceeded $5 million. These facts, and others, are what set up the claim for extra-contractual liability against MedPro in the first place. For purposes of Exclusion (m), the probative inquiry was what MedPro knew or should have known when it made the decision not to accept the policy limit demands, and the reasonableness of its actions based on that knowledge. In general, the outcome of a jury trial can turn on a wide array of factors that a reasonably prudent insurer would have no reason to predict. That general rule was no less true in Dr. Phillips's case. The Court's decision to confine the presentation of evidence to this time period was further warranted by the dizzying twists and turns the malpractice case took as it proceeded through discovery, trial, and two levels of Texas state court appeals. That AISLIC relies on dicta from a 1975 California decision to argue that the size of the ultimate verdict is probative of MedPro's duty does not convince the Court that AISLIC is entitled to a new trial.

### *5.     MedPro's Termination of Adjuster Debbie Crawford*

AISLIC submits that it was prejudiced when it was not permitted to elicit testimony that Debbie Crawford, the MedPro claims adjuster who initially investigated the malpractice action against Dr. Phillips and who made the decision to reject the policy limit demands, was terminated from her employment with MedPro. AISLIC contends that the testimony was necessary because MedPro's Vice President of Claims, Robert Ignasiak, testified that he stood by Crawford's investigation, and that her decisions were reasonable. Further, because he still maintained that belief, the "jury could well have believed that MedPro and Mr. Ignaziak never had any questions regarding Ms. Crawford's performance in her role as a claims adjuster." (Mot. 20.) According to AISLIC, this is simply not true, as MedPro assigned Dr. Phillips's claim to another adjuster shortly after Crawford denied the policy limit demands and, in December 2005, terminated her employment for failing to comply with the requirements that MedPro had for claims specialists.

AISLIC was not denied a fair trial when it was not permitted to explore with Mr. Ignaziak a termination that occurred in December 2005, some eighteen months after the second settlement offer was made. Not only was AISLIC permitted to cross-examine Mr. Ignaziak about Crawford's compliance with MedPro policies and procedures as it pertained to the particular file and the particular decisions at issue, nothing about her termination created any inference that it was related to her handling of Dr. Phillips's claim. Mr. Ignaziak was not involved in her termination and did not know the specifics of her termination. Contrary to AISLIC's claims, questioning of Mr. Ignaziak would not have rebutted his testimony that he believed she did not mishandle the Dr. Phillips/Bramlett file. Additionally, had there been any such connection, the evidence was excludable as a "subsequent remedial measure."

### *6.     John Bedingfield Mediation Email*

AISLIC asks the Court to revisit its in limine ruling precluding the admission of a post-*Stowers* email from MedPro employee John Bedingfield. Although Bedingfield was not the regularly assigned adjuster, but merely standing in for the regular adjuster during a mediation that occurred after the *Stowers* demands had expired, AISLIC claims that its contents should have been presented to the jury. AISLIC takes issue with the Court's ruling that the questionable probative value of the email would have been outweighed by the danger of unfair prejudice.

The Court does not find that the exclusion of the email warrants a new trial. The Court took measures to limit the testimony to events that occurred before MedPro rejected the second, and final, *Stowers* demand. This was so because, "[i]n the context of a *Stowers* lawsuit, evidence concerning claims investigation, trial defense, and conduct during settlement negotiations is necessarily subsidiary to the ultimate issue of whether the claimant's demand was reasonable under the circumstances, such that an ordinarily prudent insurer would accept it." *Coats v. Ruiz*, 198 S.W.3d 863, 882 (Tex. App. 2006) (citing *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 848–49 (Tex. 1994)).

The email was not probative because it was not based on facts known to, or available to, MedPro before the *Stowers* demands expired. Mr. Bedingfield refers, for example, to the deposition of Dr. Phillips that occurred after the second demand expired and which surprised defense counsel and MedPro with new (and later retracted) information. He also refers to the deposition of Dr. Phillips's expert, which also occurred after the second demand expired. Moreover, allowing the email into evidence would have then led to additional post-*Stowers* demand evidence. Mr. Bedingfield advised that MedPro obtain outside counsel to review the *Stowers* issue. MedPro did so, and this outside counsel reviewed the entire file, including portions

13

not reviewed by Mr. Bedingfield, and opined that MedPro had responded appropriately to the *Stowers* demands.

The Court agrees with MedPro's assessment on this matter, that the introduction of Mr. Bedingfield's email would have inevitably led to a trial within a trial to address the purported flaws in his assumptions. Any probative value that could be gleaned from such a minitrial was outweighed by the risk of confusion of the issues by introducing facts not known before the settlement demands expired, and by wasting time analyzing the Bedingfield assumptions. The exclusion of the email did not so limit AISLIC in the evidence that it could present to the jury that it was stopped from presenting its case.

## CONCLUSION

Based on the reasons stated above, American International Specialty Lines Insurance Company's Rule 59 Motion for New Trial [ECF No. 179] is DENIED.

SO ORDERED on April 17, 2020.

 s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT